**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Calisesi, Toi, and Jeffri Bolton, ex rel. United States of America, | No. CV-13-01150-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Hot Chalk, Inc., et al., | |
| Defendants. | |

Before the Court is Concordia College's Motion to Dismiss the Second Amended Consolidated Complaint (Doc. 96), the Motion to Dismiss Second Amended Consolidated Complaint by Concordia University (a Nebraska not for profit) (Doc. 107), and Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint (Doc. 101 (redacted) and Doc. 104 (sealed, unredacted)) filed, or joined in the alternative, by all Defendants.

**I.       BACKGROUND**

This is an action under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, to recover damages and civil penalties for allegedly false statements, claims, and certifications made or caused to be made by four not-for-profit higher education institutions, a for-profit corporation providing services under contracts with the institutions, and three employees of the for-profit corporation, for the purpose of receiving funds through federal scholarship and financial aid programs under Title IV of

the Higher Education Act.  The action was filed by three former employees of the for-profit institution on behalf of the United States.

Defendant HotChalk, Inc., provides turnkey services to post-secondary educational institutions to deliver internet-based degree programs.  It has provided such services to the following institutions:   University of Mary, Concordia University (a Portland, Oregon, not-for-profit) ("CUP"), Concordia University (a Nebraska not-for-profit) ("CUNE"), and Concordia College New York ("CCNY") (collectively the "Defendant Institutions").[1]   The HotChalk employee defendants are Edward Fields, James Cheshire, and Mark Zinselmeier (collectively the "Individual Defendants"). Plaintiffs Regina Calisesi, Toi Bolton, and Jeffri Bolton were employed by HotChalk as enrollment specialists.

The Defendant Institutions entered into Program Participation Agreements with the United States Department of Education in which they certified they were and would remain in compliance with Title IV statutes and regulations.  The Defendant Institutions and HotChalk were sponsors and/or co-applicants on student loan and financial aid applications completed by students enrolling in the educational programs offered by the Defendant Institutions.   Each application certified that Defendant Institutions and HotChalk were in compliance with all of the Higher Education Act and Title IV program statutory and regulatory requirements.

As alleged, the compliance certifications by the Defendant Institutions and HotChalk were false because Defendants violated federal law by paying incentives for student recruitment, outsourcing more than 50% of Defendant Institutions' education programs, and making misleading promises concerning scholarships or other financial considerations.   The Second Amended Consolidated Complaint includes three counts under the False Claims Act:  (1) knowingly presenting a false or fraudulent claim for

---

[1] The Second Amended Consolidated Complaint also names Centenary College ("Centenary") as a Defendant, but Plaintiffs voluntarily dismissed all claims against Centenary on September 19, 2014.  (Doc. 92.)

payment and knowingly making a false statement material to a false or fraudulent claim (31 U.S.C. § 3729(a)(1)(A), (B) against all Defendants); (2) conspiring to present a false claim and make a false statement (31 U.S.C. § 3729(a)(1)(C) against all Defendants); and (3) retaliating for lawful acts done in furtherance of efforts to stop one or more violations of the False Claims Act (31 U.S.C. § 3730(h) against HotChalk and the Individual Defendants by Calisesi only).

## II.   CUNE'S RULE 12(b)(5) MOTION TO DISMISS FOR UNTIMELY SERVICE OF PROCESS (DOC. 107)

If a defendant is not served within 120 days after a complaint is filed, Fed. R. Civ. P. 4(m) requires a court to dismiss an action without prejudice against that defendant or order that process be made within a specified time.  But a court must extend the time for service for an appropriate period if the plaintiff shows good cause for the failure.  CUNE contends that Plaintiffs failed to accomplish valid service of process of the First Amended Complaint upon CUNE within 120 days.

On April 10, 2014, Calisesi filed under seal a Notice of Filing Qui Tam First Amended Complaint, which included as an exhibit a proposed Qui Tam First Amended Complaint adding CUNE as a defendant.  (Doc 25.)  On April 16, 2014, the Court unsealed this case and ordered Calisesi to serve the summons and complaint on each defendant.  (Doc. 27.)  In May 2014, Calisesi served a Qui Tam First Amended Complaint on some parties, but she never filed it.

On May 27, 2014, Toi and Jeffri Bolton filed a Notice of Filing Qui Tam First Amended Complaint and also filed their Qui Tam First Amended Complaint.  (Docs. 32, 33.)  Toi and Jeffri Bolton's First Amended Qui Tam Complaint did not name CUNE as a defendant.  (*Id.*)

On June 30, 2014, upon stipulation of Plaintiffs and Defendants, which did not include CUNE, the Court ordered that Plaintiffs were permitted to file a consolidated Second Amended Complaint by July 7, 2014.  (Docs. 51, 52.)  On July 7, 2014, Plaintiffs filed a pleading titled "Qui Tam First Amended Consolidated Complaint," attached as an

1   exhibit to a Notice of Filing and not as a separate document.  (Docs. 56, 57.)  On July 8,

2   2014, Plaintiffs filed a "Qui Tam First Amended Consolidated Complaint," which named

3   CUNE as a defendant.  (Doc. 59.)  Therefore, Rule 4(m) permitted Plaintiffs until

4   November 5, 2014, *i.e.*, 120 days after the First Amended Consolidated Complaint was

5   filed, to serve process on CUNE.

6         On August 29, 2014, Plaintiffs filed their Second Amended Consolidated

7   Complaint.  (Doc. 88.)  Service of a summons and the Second Amended Consolidated

8   Complaint on CUNE was executed on October 29, 2014.  (Doc. 117.)  Therefore, service

9   of process on CUNE was made within the time permitted under the Federal Rules of

10   Civil Procedure, and CUNE's motion to dismiss under Rules 4(m) and 12(b)(5) will be

11   denied.

12  **III.  FEDERAL PLEADING REQUIREMENTS**

13         Under Fed. R. Civ. P. 8(a)(2), a pleading that states a claim for relief must contain

14   "a short and plain statement of the claim showing that the pleader is entitled to relief."  A

15   complaint need contain only "enough facts to state a claim for relief that is plausible on

16   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

17         In deciding a motion to dismiss under Rule 12(b)(6), all allegations of material

18   fact are assumed to be true and construed in the light most favorable to the nonmoving

19   party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Dismissal under Rule

20   12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of

21   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

22   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The court accepts as true all factual allegations

23   pled, but does not assume legal conclusions in a complaint to be true.  *Ashcroft v. Iqbal*,

24   566 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action,

25   supported by mere conclusory statements, do not suffice."  *Id.*  "A claim has facial

26   plausibility when the plaintiff pleads factual content that allows the court to draw the

27   reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The

28

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations by either (1) attacking the plaintiff's allegations as insufficient on their face to invoke federal jurisdiction or (2) contesting the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The first, a facial attack, is resolved by the district court as it would be under Rule 12(b)(6), *i.e.*, accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are legally sufficient to invoke the court's jurisdiction. *Id.* The second, a factual attack, requires the plaintiff to support its jurisdictional allegations with competent proof, under the same evidentiary standard applied in the summary judgment context. Thus, the plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject matter jurisdiction has been met. *Id.*

Certain elements of fraud claims must satisfy a higher standard of pleading under the Federal Rules of Civil Procedure. In alleging fraud or mistake, plaintiffs may allege malice, intent, knowledge, and other conditions of a person's mind generally, but the circumstances must be alleged with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Rule 9(b) requires a pleading to identify the "who, what, when, where, and how" of the misconduct charged, what is false or misleading about the allegedly false statement, and why it is false. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Plaintiffs alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *accord Odom v.*

*Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  However, Rule 9(b)'s particularized pleading requirement may be relaxed to permit allegations of fraud based on information and belief where plaintiffs are not likely to have personal knowledge of all of the underlying facts, such as in cases of corporate fraud, and the allegations are accompanied by a statement of facts on which the belief is founded.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  In cases of corporate fraud, where plaintiffs cannot attribute particular fraudulent conduct to each defendant as an individual, the allegations should include the misrepresentations themselves with particularity and, where possible, identify the roles of individual defendants in the misrepresentations.  *Id.*

Because qui tam actions under the False Claims Act involve allegations of fraud, they must meet not only the plausibility requirements of Rule 8, but also the particularity requirements of Rule 9(b).  *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011); *Cafasso*, 637 F.3d at 1055; *Bly-Magee*, 236 F.3d at 1018.  Rule 9(b)'s particularity requirements are wholly consistent with the False Claims Act's purpose to "encourage insiders privy to a fraud on the government to blow the whistle on the crime." *Bly-Magee*, 236 F.3d at 1019.  Such insiders should have adequate knowledge of the wrongdoing to be able to comply with Rule 9(b), thereby giving defendants notice of the particular misconduct alleged to constitute the fraud charged.  *Id.*  Further,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Corinthian Colleges*, 655 F.3d at 997-98.

Under Rule 9(b), to plead a claim under the False Claims Act, it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v.*

*Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010).  A plaintiff may, but is not required to, provide representative examples of false claims or payments.  *Id.*  Thus,

> To survive a Rule 9(b) motion to dismiss, a complaint alleging implied false certification must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation.

*Id.* at 998.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts should consider five factors:  bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "Futility alone can justify the denial of a motion to amend."  *Id.*  Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading.  *Corinthian Colleges*, 655 F.3d at 995.  Dismissal without leave to amend is proper if the complaint cannot be cured by any amendment.  *Id.*  Courts have "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint.  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

## IV.   CUNE'S AND CCNY'S SEPARATE MOTIONS TO DISMISS FOR INSUFFICIENT PLEADING (DOCS. 96, 107)

CUNE and CCNY each contend that the Second Amended Consolidated Complaint (Doc. 88) does not plead claims against either of them with particularity, *i.e.*, it does not give either notice of its particular role in the alleged fraudulent scheme, but rather bundles them with the other defendants.  Because CUNE and CCNY join Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint (Docs.

101, 104), issues they raise that apply to all of the Defendant Institutions will be addressed in the context of Defendants' Joint Motion to Dismiss (Docs. 101, 104).

The Second Amended Consolidated Complaint alleges:  "HotChalk is engaged in enrollment activities for CUNE and CCNY under the auspices of the HotChalk-CUP contract.  Thus, CUNE and CCNY provide HotChalk with an incentive payment of 75% of the tuition for each student enrolled as a result of the HotChalk Defendants' activities." It alleges that HotChalk's agreement with CUP to receive incentive payments is based on students it has enrolled into CUNE's and CCNY's educational programs.  It further alleges that CCNY and CUNE agreed to pay HotChalk, and HotChalk was paid, illegal incentive payments pursuant to contracts between CUP and CCNY and between CUP and CUNE.  It alleges that HotChalk provides services to CUNE and CCNY through the CUP contract and receives payment through the CUP contract for students enrolled by HotChalk in CUNE's and CCNY's programs.

The Second Amended Consolidated Complaint further alleges that HotChalk's contract with CUP is substantially similar to HotChalk's contract with Centenary, which is attached to the Second Amended Consolidated Complaint, except that it requires CUP to provide HotChalk an incentive payment of 75% of the tuition for each student enrolled by HotChalk rather than the 80% payment required in HotChalk's contract with Centenary.  It alleges that in the case of CUP, CUNE, and CCNY, each student's tuition money was paid to the institution, which in turn provided 75% of the money to HotChalk for each student enrolled by HotChalk in violation of the incentive payment ban.  It alleges that when a student enrolls in a CUNE or CCNY online program, the student actually is enrolling in a program delivered entirely by HotChalk.  The Second Amended Consolidated Complaint also alleges that "[a]s of February 28, 2014, HotChalk was engaged in enrollment activities for, and had begun to enroll students into educational programs marketed and operated under the CUNE and CCNY names as those schools' 'turnkey' servicer."  (Doc. 88 at 23.)  These specific allegations sufficiently support including CUNE and CCNY in the term "Defendant Institutions," alleged to be liable to

1    the United States for falsely representing they were in compliance with the Higher

2    Education Act's prohibitions against using incentive payments for enrollments in order to

3    receive Title IV funds and for conspiring to present to the United States false or

4    fraudulent claims for student financial aid.

5        In addition, CCNY contends that, as alleged, no Plaintiff remained employed at

6    HotChalk when HotChalk began performing enrollment activities on CCNY's behalf.

7    However, the Second Amended Consolidated Complaint alleges that HotChalk employed

8    Calisesi through February 28, 2014, and that, as of February 28, 2014, HotChalk was

9    engaged in enrollment activities for CUNE and CCNY and had begun to enroll students

10   into programs marketed and operated under the CUNE and CCNY names.[2]

11       Therefore, CUNE's and CCNY's separate motions to dismiss for insufficient

12   pleading (Docs. 96, 107) will be denied.

13   **V.    DEFENDANTS' JOINT MOTION TO DISMISS (DOCS. 101, 104)**

14       **A.    Consideration of Materials Outside the Pleadings**

15       Generally, material beyond the pleadings may not be considered in deciding a

16   Rule 12(b)(6) motion.  However, a court may consider evidence on which the complaint

17   necessarily relies if (1) the complaint refers to the document, (2) the document is central

18   to the plaintiff's claim, and (3) no party questions the authenticity of the copy of the

19   document submitted to the court.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006);

20

21       [2] Although the Second Amended Consolidated Complaint alleges that as of
22   February 28, 2014, HotChalk "had begun to enroll students into education programs
     marketed and operated under the CUNE and CCNY names as those schools' 'turnkey'
23   servicer" (Doc. 88 at 23), in their response to the Joint Motion to Dismiss, Plaintiffs state,
     "Relator Calisesi had direct and independent knowledge . . . of Concordia – NY's
24   relationship with HotChalk and violations of the incentive payment ban regardless of
25   whether any students were enrolled by HotChalk for Concordia – NY during Relator's
     employment at HotChalk."  (Doc. 132 at 28-29.)  If Plaintiffs no longer allege that
26   enrollment occurred during Calisesi's employment, they must allege facts from which it
     reasonably can be inferred that she had direct and independent knowledge.  Their bare
27   assertion is insufficient.

28

1   *accord United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).   The

2   Court will not consider the Exhibits attached to Defendants' Joint Motion to Dismiss

3   (Docs. 101, 104) because the Second Amended Consolidated Complaint does not refer to

4   these documents, they are not central to Plaintiffs' claim, and their authenticity is

5   questioned.[3]

6          In their response to Defendants' Joint Motion to Dismiss, Plaintiffs object to

7   consideration of the Exhibits attached to the Joint Motion and move to strike the Exhibits

8   without identifying any statute or rule authorizing such a motion.  (Doc. 132.)  A motion

9   to strike may be filed only if it is authorized by statute or rule or seeks to strike on the

10  ground that the submission is prohibited or not authorized by a statute, rule, or court

11  order.  LRCiv 7.2(m)(1).  Further, an objection to the admissibility of evidence offered in

12  support of a motion can be sustained without striking the evidence.   *See* LRCiv

13  7.2(m)(2).

14         Therefore, in deciding Defendants' Joint Motion to Dismiss (Docs. 101, 104),

15  Plaintiffs' objection to its Exhibits is sustained, the Court does not consider the Exhibits,

16  and Plaintiffs' motion to strike the Exhibits will be denied.

17      **B.   Count I:   False Claims and False Statements (31 U.S.C.
18           § 3729(a)(1)(A), (B))**

19         The False Claims Act, 31 U.S.C. § 3729(a), imposes liability on any person who

20  "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for

21  payment or approval" or "(B) knowingly makes, uses, or causes to be made or used, a

22  false record or statement material to a false or fraudulent claim."  To establish a cause of

23  ─────────────

24         [3] One of the documents Defendants would like the Court to consider is the
    Department of Education's March 17, 2011 "Dear Colleague Letter," which also is
25  attached to the Second Amended Consolidated Complaint as Exhibit F to the contract
    between HotChalk and Centenary College.  (Doc. 88-1 at 31-33.)  The Second Amended
26  Consolidated Complaint does not refer to Exhibit F or rely on it.  Even if considered, the
    letter interpreting regulations to become effective July 1, 2011, would not be relevant to
27  whether Defendants knowingly violated Title IV before July 1, 2011.

28

action under § 3729(a)(1)(A), Plaintiffs must prove "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). To establish a cause of action under § 3729(a)(1)(B), Plaintiffs must prove "defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* at 1048.

The terms "knowing" and "knowingly" mean that the person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). The terms "require no proof of specific intent to defraud." *Id.* To establish "knowing" or "knowingly," a plaintiff is not required to prove that the defendant acted with intent to deceive. *Hooper*, 688 F.3d at 1049. However, "innocent mistakes" and "negligence" are not actionable under the False Claims Act. *Wang v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992) ("Bad math is no fraud."). A defendant may show lack of knowledge by demonstrating its incorrect interpretation of a regulation was made in good faith. *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir. 1998) ("Absent evidence that the defendants knew that the VHA Guidelines on which they relied did not apply, or that the defendants were deliberately indifferent to or recklessly disregardful of the alleged inapplicability of those provisions, no False Claims Act liability can be found.").

In order for an institution to participate in a Title IV, Higher Education Act program, *i.e.*, become an "eligible institution," the institution must enter into a written Program Participation Agreement with the Secretary of the Department of Education and agree that it will comply with all statutes of or applicable to Title IV and all applicable regulations prescribed under Title IV. 34 C.F.R. § 668.14(a)(1), (b)(1). An institution's continued participation in any Title IV program is conditioned upon continued compliance. 34 C.F.R. § 668.14(a)(1).

Count I of the Second Amended Consolidated Complaint alleges that Defendants knowingly presented or caused to be presented to the United States government false or fraudulent claims for student financial aid and that Defendants knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim to the United States government for student financial aid.  The Second Amended Consolidated Complaint alleges that each Defendant Institution violated "at least three"[4] requirements for participation in Title IV programs, falsely certified it fully complied with all Title IV requirements, and submitted student loan applications dependent on its false certifications.

### 1.      Recruiter-Incentive Compensation Ban

An institution participating in a Title IV program must "not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . to any persons or entities engaged in any student recruiting or admission activity . . . ."  20 U.S.C § 1094(a)(20); 34 C.F.R. § 668.14(b)(22)(i).   A "person engaged in any student recruitment or admission activity" means "any employee who undertakes recruiting or admitting of students" and "any higher level employee with responsibility for recruitment or admission of students."   34 C.F.R. § 668.14(b)(22)(iii)(C).

Since July 1, 2011, "an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity . . . is considered to have received such adjustments based upon success in securing enrollments . . . if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments . . . ."   34 C.F.R. § 668.14(b)(22)(i)(B).  Eligible institutions, contractors to eligible institutions, and other entities may make "merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in

---

[4] (*See* Doc. 88 at 5.)

securing enrollments or the award of financial aid."   34 C.F.R. § 668.14(b)(22)(ii)(A). "Securing enrollments or the award of financial aid" does not include paying a third party for contact information for prospective students provided that payment is not based on any additional action by the third party or prospective students or the number of students who apply for enrollment, are awarded financial aid, or are enrolled for any period of time.  34 C.F.R. § 668.14(b)(22)(iii)(B)(2).

From 2002 until July 1, 2011, Department of Education regulations provided a "safe harbor" for an educational institution that provided "payment of fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based *solely* on the number of students recruited, admitted, enrolled, or awarded financial aid."  *United States v. Corinthian Colleges*, 655 F.3d 984, 989 & n.1 (9th Cir. 2011) (emphasis added).  Current Department of Education regulations "now flatly prohibit institutions receiving federal award money from adjusting the salaries of student recruiters and financial aid officers 'based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.'"  *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 820 (7th Cir. 2013) (quoting 334 C.F.R. § 668.14(b)(22)(ii)(A) (2013)).

The Second Amended Consolidated Complaint alleges that the Defendant Institutions violated the recruiter-incentive compensation ban by paying HotChalk a percentage of all tuition payments received for students enrolled by HotChalk "plus other per-student, incentive payments."  (Doc. 88 at 16, ¶ 37.)  It alleges, in essence, that the Defendant Institutions, through their contractual relationships with HotChalk, also violated the recruiter-incentive compensation ban by (1) giving the enrollment specialists who met or exceeded enrollment quotas opportunity to work overtime hours and receive overtime pay and (2) terminating or disciplining enrollment specialists who did not achieve enrollment quotas through a sham performance rating system that purported to evaluate employees based on "core values" but used the "core values" ratings to disguise

evaluation based exclusively on student enrollment.  It alleges that under HotChalk's "ramp rate" policy, enrollment specialists received $100 for every student they enrolled who graduated.  The Second Amended Consolidated Complaint also alleges that by raising salaries based on meeting quotas, selectively offering overtime work, and awarding stock in the company for excelling at enrollments, enrollment specialists' annual salaries were adjusted more than twice during a twelve month period based solely on the number of students enrolled and therefore not protected by the safe harbor regulation.

First, Defendants contend that the Second Amended Consolidated Complaint does not satisfy Rule 9(b)'s particularity requirements because it does not allege facts to show Defendants' state of mind.  However, knowledge and other conditions of a person's mind may be alleged generally in a fraud claim, and plaintiffs are not required to prove specific intent to defraud to prove defendants acted knowingly.  Fed. R. Civ. P. 9(b); 31 U.S.C. § 3729(b)(1).

Second, Defendants contend that (1) their conduct did not violate the recruiter-incentive compensation ban and (2) if they did violate the ban, they could not have "knowingly" made false statements or submitted false claims because they relied on guidance provided by the Department of Education.  For their defense, they rely on the Department of Education's March 17, 2011 "Dear Colleague Letter," regarding regulations to become effective July 1, 2011, permitting institutions to make payments based on percentage of tuition to unaffiliated third parties under certain conditions.  As stated previously, the Court does not consider the letter Defendants attached to their motion, and even if it did, the letter does not show Defendants' knowledge regarding alleged violations before July 1, 2011, and by itself does not show that Defendants in fact relied on the Department's guidance and complied with it after July 1, 2011.  Similarly, the Court does not consider the contracts Defendants attached to their motion, which Defendants contend show their compliance with the ban, and even if considered, the contracts alone do not show that Defendants' conduct in fact conformed to the contracts.

Moreover, one is a 2012 amendment, and another is dated August 2014, after this lawsuit was filed.

Third, Defendants contend that the Second Amended Consolidated Complaint does not comply with Rule 8 because it does not allege any facts regarding the dates of the alleged recruiter-incentive compensation violations.   The Second Amended Consolidated Complaint alleges that from "as early as July 2010 to the present, the Defendant Institutions secured enrollments in their online programs and received Title IV funds for students enrolled in their online programs marketed by the HotChalk Defendants" and "students obtained loans guaranteed by the government, or in some cases, financial aid directly from the government."  It also alleges "[s]ince no later than July 7, 2009, HotChalk has received thousands of illegal incentive payments pursuant to its written contracts with CUP," and "[s]ince no later than March 14, 2012, HotChalk has been paid thousands of illegal incentive payments pursuant to its written contracts with U. Mary."  It alleges violations by CCNY and CUNE "[s]ince an unknown date believed to be in or after 2010."   The Second Amended Consolidated Complaint alleges that Plaintiffs have direct knowledge of the false statements and claims made or presented as a result of their employment at HotChalk over the period of October 25, 2010, to February 28, 2014.  Thus, it alleges generally that False Claims Act violations occurred over a certain time period.   Moreover, it alleges at least some recruiter-incentive compensation violations that are not protected by the safe harbor, *i.e.*, salary adjustments made more than twice in a year and *solely* based on recruitment numbers.  Therefore, the Second Amended Complaint provides adequate notice of the approximate relevant period during which the alleged violations of the recruiter-incentive compensation ban occurred.

Fourth, Defendants contend that HotChalk's alleged "giveaways" of free iPads and textbooks to students do not violate the recruiter-incentive compensation ban.  Plaintiffs respond that the "giveaways" transform students into recruiters by paying students with expensive electronics or thousands of dollars in reduced tuition "in return for recruiting new students."  (Doc. 132 at 24.)  But the Second Amended Consolidated

Complaint does not allege that students are given gifts in exchange for recruiting other students.  It alleges only that the enrollment specialists "are required to tell prospective students that if they 'sign up' now for 'this cohort' they will receive a free iPad and textbooks." (Doc. 88 at 30.)  The Second Amended Consolidated Complaint incorrectly alleges that "this activity" violates 34 C.F.R. § 668.14(b)(22)(iii)(A), which only defines "commission, bonus, or other incentive payment."  In fact, 34 C.F.R. § 668.14(b)(22)(iii)(C) plainly defines the persons prohibited from receiving compensation for success in securing enrollments as *employees*.  Therefore, allegations regarding gifts to students fail to state a claim based on violation of the recruiter-incentive compensation ban and should not be included in a further amended complaint.

### 2.    Outsourcing

The Second Amended Consolidated Complaint does not provide a short and simple statement of Plaintiffs' claim for relief related to Defendant Institutions' outsourcing.  It alleges that the Defendant Institutions have violated the prohibition against outsourcing the majority of a student's educational program through its relationship with HotChalk, but does not indicate what regulation or statute was allegedly violated and relate factual allegations to the regulation or statute.

Also, Defendants contend the Court lacks jurisdiction over Plaintiffs' claim regarding outsourcing because Plaintiffs quote from HotChalk's public web site and therefore cannot be the original sources of that information.  The Second Amended Consolidated Complaint states, "HotChalk openly touts that it provides a 'unique, turnkey partnership opportunity which removes the barriers to growing your degree programs online'" and frequently refers to HotChalk as a "turnkey servicer."  A court must dismiss an action or claim under the False Claims Act "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless the person bringing the action is an original source of the information." 31 U.S.C.

§ 3730(e)(4)(A) (2010).[5]  "'Original source' means an individual who either (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action" under the False Claims Act.  31 U.S.C. § 3730(e)(4)(B) (2010).  Without knowing what regulation or statute has allegedly been violated, it is impossible to determine whether Plaintiffs' claims depend on publicly disclosed information.

### 3.      Third-Party Servicers

The Second Amended Consolidated Complaint alleges that Defendants are in violation of the regulations pertaining to third-party servicers, but Plaintiffs have apparently abandoned this allegation because they do not respond to Defendants' contention that HotChalk is an "unaffiliated third party" and not a "third-party servicer."

In the present context, a "third-party servicer" is an organization that enters into a contract with an eligible institution of higher education to administer any aspect of the institution's student assistance programs.  20 U.S.C. § 1088(c).  A non-exhaustive list of functions provided by third-party servicers is provided in 34 C.F.R. § 668.2(b) and includes processing student financial aid applications, determining student eligibility, certifying loan applications, loan servicing and collections, and disbursing Title IV program funds.  The Second Amended Consolidated Complaint's allegations that HotChalk administers the Defendant Institutions' online degree programs, its enrollment specialists ensure that students complete loan applications and submit them to the school and federal government, its enrollment specialists are required to convince students to

---

[5] Section 3730(e)(4) was amended in July 2010 and not made retroactive.  The version applicable to this case is the one that was in force when the events underlying this suit occurred.  *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013); *see Malhotra v. Steinberg*, 770 F.3d 853, 857 (9th Cir. 2014).  It is possible that the pre-amendment version applies because, as currently alleged, some of the events underlying this suit may have occurred before July 2010.

accept financial aid packages offered by the schools, and its enrollment specialists offer faux scholarships that are really tuition discounts, do not allege facts showing that HotChalk administers Title IV student assistance programs.

Therefore, the Second Amended Consolidated Complaint's factual allegations do not support its legal conclusion that HotChalk is a third-party servicer, and HotChalk's contracts with the Defendant Institutions cannot, as a matter of law, violate the obligations of a third-party servicer under 34 C.F.R. § 668.25.

### 4.    Misrepresentations

If an eligible institution "has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, or the employability of its graduates," the Secretary of Education may suspend or terminate the eligibility status for any or all of its programs.  20 U.S.C. § 1094(c)(3)(A).  If an eligible institution "has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, and the employability of its graduates," the Secretary of Education may impose a civil penalty not to exceed $25,000 for each violation or misrepresentation.  20 U.S.C. § 1094(c)(3)(B).  Misrepresentation concerning the nature of an institution's educational program includes false, erroneous, or misleading statements concerning the number, qualifications, training, and experience of its faculty and other personnel.  34 C.F.R. § 668.72(i).  Misrepresentation concerning the nature of an institution's financial charges includes false, erroneous, or misleading statements concerning offers of scholarships to pay all or part of a course charge and whether a particular charge is the customary charge at the institution for a course.  34 C.F.R. § 668.73(a), (b).

The Second Amended Consolidated Complaint alleges that the HotChalk Defendants instructed enrollment specialists to offer prospective students who needed persuasion "scholarships," which were really tuition discounts, and to mislead students by telling them the "scholarships" were only available if students signed up now for the next cohort, when they actually were offered at any time.  It also alleges that each student who refers someone who also enrolls and begins in the same cohort is given a $2,000

"scholarship," which is not a scholarship, but rather an improper incentive for referrals. The Second Amended Consolidated Complaint does not allege that students did not receive the tuition discount they were offered.  Plaintiffs do not explain why referring to tuition discounts as "scholarships" constitutes a misrepresentation under the Higher Education Act; they only imply that true scholarships require students to earn them.

The Second Amended Consolidated Complaint also alleges violation of § 668.73 by Defendant Institutions allowing HotChalk to operate from its Phoenix call center while giving the impression that HotChalk enrollment specialists were employees of and physically located at the Defendant Institutions.  It appears that the reference to § 668.73, misrepresentation regarding financial charges, is a clerical error.  The Second Amended Consolidated Complaint does not plead enough facts regarding substantial misrepresentation to state a claim that is plausible on its face.

In summary, Plaintiffs are not required to allege facts to show Defendants' state of mind, Defendants' contracts do not refute allegations regarding their conduct during the relevant time period, and Count I of the Second Amended Consolidated Complaint sufficiently alleges the approximate dates of alleged violations of the recruiter-incentive compensation ban.  However, Count I does not satisfy the pleading requirements of Rules 8(a) and 9(b) because it does not give fair notice of all of the types or categories of alleged Title IV violations it intends to encompass, what requirement has been violated by the alleged outsourcing and how it has been violated, what regulations are violated by the alleged misrepresentations, and how the alleged misrepresentations are "substantial." Further, the alleged gifts to students do not violate the recruiter-incentive compensation ban, and the conclusion that HotChalk is a third-party servicer is not supported by factual allegations.

### C.      Count II:  Conspiracy (31 U.S.C. § 3729(a)(1)(C))

The False Claims Act, 31 U.S.C. § 3729(a)(1), imposes liability on any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B)."   Count II alleges that Defendants conspired to commit violations of subparagraphs (A) and (B) of § 3729(a)(1).

General civil conspiracy principles apply to conspiracy claims under the False Claims Act.  *U.S. ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 546 n.3 (7th Cir. 1999); *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991).  To state a claim for conspiracy under the False Claims Act, plaintiffs must plead that the alleged conspirators agreed to make use of a false record or statement for the purpose of getting the government to pay a claim.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (affirming dismissal of False Claims Act conspiracy claim where complaint was not supported by specific allegations of an agreement or overt act); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 50-51 (D.D.C. 2011) (dismissing False Claims Act conspiracy claim where complaint lacked factual allegations supporting the inference that the alleged conspirators had entered into any agreements for the purpose of getting the government to pay a claim).

Although Count II alleges that Defendants conspired to commit violations of both subparagraphs (A) and (B) of § 3729(a)(1), it includes only an allegation related to subparagraph (A):  "Defendants conspired to knowingly present or cause to be presented to the United States government false or fraudulent claims for student financial aid."  (Doc. 88 at 50.)  It does not include an allegation related to subparagraph (B) regarding conspiracy to make use of a false record or statement for the purpose of getting the government to pay a claim.  Moreover, it does not allege which Defendants conspired with which or any facts regarding an agreement or overt act.

Plaintiffs' only response regarding this pleading insufficiency is that the Second Amended Consolidated Complaint "is a full statement of the details of the conspiracy, including all the Defendants acting in concert with one another to submit and have claims falsely paid by the United States" and "Defendants' knowledge of their fraudulent scheme . . . shows their specific intent to defraud the government."  (Doc. 132 at 29.)

Plaintiffs' factual allegations provide no basis for concluding that all the Defendant Institutions acted in concert with one another, and they do not provide a basis for reasonably inferring that HotChalk conspired with each Defendant Institution individually to certify compliance with Title IV, knowing that HotChalk was violating Title IV and, in some circumstances, also violating the written contracts between HotChalk and each Defendant Institution.

Therefore, Count II of the Second Amended Consolidated Complaint does not satisfy Rule 9(b)'s particularity requirements.

### D.   Count III:   Calisesi's Retaliation Claim Against HotChalk and Individual Defendants (31 U.S.C. § 3730(h))

The False Claims Act, 31 U.S.C. § 3730(h) provides relief for any employee, contractor, or agent if he or she is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" because of lawful acts done by the employee, contractor, or agent in furtherance of an action under § 3730 or other efforts to stop violations of § 3729.   Requirements for a claim under § 3730(h) are:   "1) the employee must have been engaging in conduct protected under the Act; 2) the employer must have known that the employee was engaging in such conduct; and 3) the employer must have discriminated against the employee because of her protected conduct."   *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)).

Defendants contend that Plaintiff "Calisesi fails to allege a single fact demonstrating any adverse employment action was taken against her either as a result of filing this action or for attempting to prevent [Higher Education Act] or [False Claims Act] violations."   (Doc. 101 at 36; Doc. 104 at 36.)   Regarding her retaliation claim, the Second Amended Consolidated Complaint makes only the following allegations:

> 122.   Calisesi was constructively discharged, threatened, harassed and discriminated against in the terms and conditions of her employment

for HotChalk, Fields, Cheshire and/or Zinselmeier because of lawful acts done by her in furtherance of other efforts to stop one or more violations of the FCA.  As a result, Calisesi is entitled to the relief provided for by 31 U.S.C. § 3730(h)(2).

123.   Calisesi was constructively discharged, threatened, harassed and discriminated against in the terms and conditions of her de facto employment for CUP because of lawful acts done by her in furtherance of other efforts to stop one or more violations of the FCA.  As a result, Calisesi is entitled to the relief provided for by 31 U.S.C. § 3730(h)(2).

(Doc. 88 at 51-52 (paragraph numbers duplicate those on page 50).)

Plaintiffs' response is:  "Relator Calisesi's allegations regarding Calisesi's constructive discharge are sufficient according to federal pleading standards" because she "only needs to allege facts in which 'reasonable inferences from that content' are 'plausibly suggestive of a claim entitling the plaintiff to relief.'"  (Doc. 132 at 29, quoting *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).)  "That content" refers to "non-conclusory factual content."  *Moss*, 572 F.3d at 969.  "Bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim are not entitled to an assumption of truth for the purposes of ruling on a motion to dismiss "because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation."  *Id.*   The Second Amended Consolidated Complaint does not include any "non-conclusory factual content" from which reasonable inferences plausibly suggest plaintiff is entitled to relief under a retaliation claim.  If Calisesi was constructively discharged, she has knowledge of and can plead facts showing that she was constructively discharged.

Therefore, Count III of the Second Amended Consolidated Complaint will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### E.   Individual Defendants (Edward Fields, James Cheshire, and Mark Zinselmeier)

Rule 9(b) requires that a complaint identify the role of each defendant in an alleged fraudulent scheme with separate allegations for each defendant and not "merely lump multiple defendants together."  *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011).  Defendants contend that, in addition to the Individual Defendants not being employers and therefore not liable for retaliation under the False Claims Act, the Second Amended Consolidated Complaint fails to meet the heightened pleading requirements of Rule 9(b) as to the Individual Defendants.  Plaintiffs' response addressed only the Individual Defendants' liability for retaliation (Count III).

Plaintiffs concede that co-workers, supervisors, or corporate officers who are not employers cannot be held liable for retaliation under 31 U.S.C. § 3730(h), but argue that the Individual Defendants "were Calisesi's employers—as executives of HotChalk, they hired, disciplined, and constructively discharged Calisesi."  (Doc. 132 at 30.)  However, the Second Amended Consolidated Complaint expressly alleges the Individual Defendants are employees of HotChalk:  "As employees of HotChalk, Edward Fields, James Cheshire, and Mark Zinselmeier are agents of HotChalk and the Defendant Institutions and are principal actors in regard to the fraudulent conduct alleged herein."  (Doc. 88 at 9.)  Plaintiffs do not allege that any of the Individual Defendants is an owner of HotChalk or any of the Defendant Institutions.   Therefore, as employees, the Individual Defendants are not liable under § 3730(h).

Further, the Second Amended Consolidated Complaint does not allege any basis for any of the Individual Defendants to be personally liable for false certification (Count I) or conspiracy (Count II).  Plaintiffs did not respond to Defendants' contention that the Second Amended Consolidated Complaint fails to meet the heightened pleading requirements of Rule 9(b) as to the Individual Defendants and therefore have abandoned Counts I and II against the Individual Defendants.

Therefore, all claims against the Individual Defendants will be dismissed for failure to state a claim upon which relief can be granted.  Leave to amend claims against the Individual Defendants will not be granted because the complaint's deficiencies related to Count III cannot be cured by any amendment, the complaint's deficiencies related to Counts I and II cannot be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading, and Plaintiffs have abandoned Counts I and II as to the Individual Defendants.  *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

### F.    Conclusion

The Second Amended Complaint will be dismissed under Rules 8(a) and 9(b), and Count III and all claims against the Individual Defendants will be dismissed under Rule 12(b)(6).  Leave to amend claims against HotChalk and the Defendant Institutions will be granted because leave to amend should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Leave to amend claims against the Individual Defendants will not be granted because further amendment would be futile.

Regarding Count I of the Second Amended Consolidated Complaint, Plaintiffs are not required to plead specific intent to defraud or the precise dates of fraudulent conduct, but they must allege facts showing that each Defendant is liable for knowingly making a false record or statement material to a false or fraudulent claim and for knowingly presenting a false or fraudulent claim.  Count I must plead which Defendants allegedly violated which statutes or regulations, falsely certified compliance with those statutes or regulations, and knowingly presented the false certifications to the government.

Regarding Count II of the Second Amended Consolidated Complaint, Plaintiffs must plead factual allegations showing who agreed with whom to make use of a false statement for the purpose of getting the government to pay a false claim and who agreed with whom to present the false claim.  They must plead an agreement or overt act by each Defendant that tends to show conspiracy.

Regarding Count III of the Second Amended Consolidated Complaint, Plaintiff Calisesi must plead what protected action she was engaging in, what adverse employment action was taken against her, that her employer must have known she was engaging in the protected action, and that the adverse employment action must have been taken as a result of her protected action.

### G.   Alternative Motion for More Definite Statement

Defendants' alternative motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) will be denied as moot.

IT IS THEREFORE ORDERED that Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint (Doc. 101 (redacted) and Doc. 104 (sealed, unredacted)) is granted to the extent that the Second Amended Complaint is dismissed under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6) with leave to amend, and all claims against Defendants Edward Fields, James Cheshire, and Mark Zinselmeier are dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' alternative motion for a more definite statement (Docs. 101 (redacted), 104 (sealed, unredacted)) is denied as moot.

IT IS FURTHER ORDERED that Plaintiffs' motion to strike (Doc. 132) the Exhibits attached to Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint is denied.

IT IS FURTHER ORDERED that Concordia College's Motion to Dismiss the Second Amended Consolidated Complaint (Doc. 96) is denied except as granted with respect to Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint (Doc. 101 (redacted) and Doc. 104 (sealed, unredacted)).

IT IS FURTHER ORDERED that the Motion to Dismiss Second Amended Consolidated Complaint by Concordia University (a Nebraska not for profit) (Doc. 107) is denied except as granted with respect to Defendants' Joint Motion to Dismiss Second Amended Consolidated Complaint (Doc. 101 (redacted) and Doc. 104 (sealed, unredacted)).

1    IT IS FURTHER ORDERED that Plaintiffs may file a further amended complaint

2  **by May 22, 2015**.  If Plaintiffs do not file a further amended complaint **by May 22, 2015**,

3  the Clerk shall dismiss this action without further order of the Court.

4    Dated this 1st day of May, 2015.

5

6                                          Neil V. Wake

7                                   United States District Judge