Mark A. Nadeau (Bar No. 011280)
mark.nadeau@dlapiper.com
Laura M. Kam (Bar No. 025918)
laura.kam@dlapiper.com
Ronald D. Roach (Bar No. 022662)
ronald.roach@dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Ste. 1000
Phoenix, AZ 85016-4232
Tel: 480.606.5100
*Attorneys for Defendant HotChalk, Inc.*

Paul S. Gerding Jr. (Bar No. 17237)
Paul.gerding.jr@kutakrock.com
Echo A. Orcutt (Bar No. 029345)
Echo.orcutt@kutakrock.com
**KUTAK ROCK LLP**
8601 North Scottsdale Road, Ste. 300
Scottsdale, AZ 85253-2742
Tel: 480.429.5000
*Attorneys for Defendant University of Mary*

William G. Fairbourn (Bar No. 003399)
gfairbourn@bffb.com
**BONNET FAIRBOURN FRIEDMAN &
BALINT, PC**
2325 E. Camelback Road, Ste. 300
Phoenix, AZ 85016
Tel: 602.274.1100
*Attorneys for Defendant Concordia College*

Howard R. Cabot (Bar No. 006669)
HCabot@perkinscoie.com
Jessica L. Everett-Garcia (Bar No. 018359)
JEverettGarcia@perkinscoie.com
**PERKINS COIE LLP**
2901 North Central Avenue, Ste. 2000
Phoenix, AZ 85012-2788
Tel: 602.351.8000

Jeremy D. Sacks
jeremy.sacks@stoel.com
Reilley D. Keating
reilley.keating@stoel.com
**STOEL RIVES LLP**
900 SW Fifth Ave, Ste. 2600
Portland, OR 97204-1268
Tel: 503.224.3380
*Attorneys for Defendant Concordia
University – Portland*

Steven D. Davidson
sdavidson@bairdholm.com
**BAIRD HOLM LLP**
1700 Farnam Street, Ste. 1500
Omaha, NE 68102-2068
Tel: 402.344.0500
*Attorneys for Defendant Concordia
University – Nebraska*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Calisesi, Toi, and Jeffri Bolton, ex rel. United States of America,<br><br>    Plaintiffs,<br><br>        v.<br><br>HotChalk, Inc., Concordia University, (an Oregon not for profit), University of Mary (a North Dakota not for profit), Centenary College, Concordia University (a Nebraska not for profit), Concordia College New York Foundation, Inc.,<br><br>    Defendants. | CASE NO. 2:13-CV-01150-PHX-NVW<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS THIRD AMENDED CONSOLIDATED COMPLAINT** |

1  Pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and 8 of the Federal Rules of Civil
2  Procedure, Defendants Concordia University–Portland ("Concordia-P"), Concordia
3  College New York ("Concordia-NY"), Concordia University–Nebraska ("Concordia-
4  NE"), University of Mary ("UMary") (all nonprofit, faith-based universities), and
5  HotChalk, Inc. ("HotChalk") (collectively, "Defendants")[1] move to dismiss Plaintiffs-
6  Relators' Third Amended Consolidated Complaint (the "TACC") (Doc. 136) for lack of
7  jurisdiction, failure to state a claim upon which relief can be granted, and failure to plead
8  the circumstances of fraud with particularity.[2]  This Motion is supported by the following
9  Memorandum of Points and Authorities.

10  **MEMORANDUM OF POINTS AND AUTHORITIES**

11  **I.    INTRODUCTION**

12          The TACC is the most recent installment in a two-year series of pleadings in
13  which Relators—three former HotChalk employees—have purported to assert violations
14  of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), against Defendants.  The
15  TACC remains deficient and fails to correct fatal defects the Court identified in its May
16  1, 2015 Order dismissing the Second Amended Consolidated Complaint ("SACC") in its
17  entirety (the "Dismissal Order") (Doc. 134).[3]

18          Because Relators' claims continue to fail, the Court should dismiss the TACC in
19  its entirety with prejudice, for the following reasons:

20          **Count II** fails to allege a conspiracy claim under the FCA because Relators fail to

21

22  [1] Concordia-P, UMary, Concordia-NY, and Concordia-NE are collectively referred to
23  herein as the "Institution Defendants."  Specifically, Concordia-P and UMary join in Parts
    I-III and V of this Motion.
24  [2] Pursuant to the Court's Order requiring the parties to meet and confer prior to filing of
    any motions to dismiss (Doc. 80), on June 17, 2015, the parties conferred telephonically
25  regarding this Motion and the grounds therefore.  Relators declined to amend the TACC.
26  [3] As the Court is already aware of the general nature of the Relators' allegations and
    claims, the relationships between the parties, and the backdrop of Title IV of the Higher
27  Education Act ("HEA"), 20 U.S.C. § 1001, *et seq.,* Defendants do not repeat that
    information again here, but incorporate herein their prior briefing on these issues.  *See*
28  Docs. 104 & 133.

1    adequately plead the required agreement or overt act.

2        In the absence of a well pled conspiracy, **Count I**, alleging a false certification

3    claim, fails against HotChalk because HotChalk is not alleged to have made any false

4    certification or claim to the United States.

5        Further, **Count I** fails as to all Defendants because of the following deficiencies:

6    - Relators' various accounts of alleged conduct, even if true, do not constitute
         violations of the HEA's incentive compensation rule (20 U.S.C. § 1094(a)(20)
7        and 34 C.F.R. § 668.14(b)(22)) as a matter of law.

8
     - Relators lack standing under the FCA to bring their claim for an underlying
9        alleged violation of the HEA's outsourcing rule (34 C.F.R. §668.5(c)(3)(ii)(A))
         because Relators—who cite Defendants' websites in support of this claim—are
10       not the original sources of the factual allegations pled.  Moreover, Relators
         have not alleged sufficient facts to establish a violation of the outsourcing
11       regulation; all Relators have done is list HotChalk's alleged activities and state
         the conclusory allegation that HotChalk's activities must equal "more than
12       50%" of the Institution Defendants' education programs.
13
     - Relators' attempt to assert a claim based on alleged "substantial
14       misrepresentations" in violation of 34 C.F.R. §§ 668.42-43 and 668.72-73 does
15       not succeed because Relators fail to show that the alleged misrepresentations
         are substantial and the alleged conduct is not prohibited by the HEA.
16

17       **Count III**, brought by Relator Calisesi against HotChalk only for constructive

18   discharge pursuant to 31 U.S.C. § 3730(h), fails because Calisesi again does not plead

19   facts demonstrating that she was engaged in protected action or that HotChalk took any

20   adverse employment action against her as a result of her alleged protected action.

21       Therefore, the TACC should be dismissed in its entirety with prejudice because:

22   (1) each claim fails as a matter of law; and (2) Relators, having previously amended their

23   Complaint numerous times, have failed to meaningfully respond to the Court's Dismissal

24   Order, and have not cured—and apparently cannot cure—the deficiencies the Court

25   delineated.  Enough is enough.  The Court should dismiss this action once and for all.

26   **II.    PLEADING STANDARD**

27       Fed. R. Civ. P. 8 requires a complaint to contain "sufficient factual matter" that,

28

taken as true, "state[s] a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citation and quotation marks omitted). Only well pleaded facts, not legal conclusions, are entitled to an assumption of the truth. *Id.* at 664. Only facially plausible claims requiring "more than a sheer possibility that a defendant has acted unlawfully" give rise to an entitlement for relief. *Id.* at 678. Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

FCA claims sound in fraud and must meet the particularity requirements of Rule 9. *See Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) requires Relators to "state with particularity the circumstances constituting fraud" including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Relators must plead facts, not inferences, conclusions, or logical leaps. *United States ex rel. Pilecki-Simko v. Chubb Inst.*, No. 06-3562, 2010 WL 3463307, at **1, 6 (D. N.J. Aug. 27, 2010) (dismissing under Rule 9(b) because the "series of inferences [was] too tenuous" (marks and citation omitted)), *aff'd Chubb II*, 2011 WL 3890975, at **3-4 (holding that relators' claims also failed to meet the requirements of Rule 8); *see also United States ex rel. Feingold v. Palmetto Gov. Benefits Admin'rs*, 477 F. Supp. 2d 1187, 1195-96 (S.D. Fla. 2007) (dismissing case where relator alleged only his belief that fraud was occurring).

## III.   COUNT II SHOULD BE DISMISSED WITH PREJUDICE BECAUSE RELATORS FAIL TO STATE A CLAIM FOR FCA CONSPIRACY.

Relators' claim for liability under the FCA's conspiracy prong, 31 U.S.C. § 3729(a)(1)(C), is again insufficient under Fed. R. Civ. P. 9(b). In order to state an FCA conspiracy claim, Relators must allege an agreement to defraud the federal treasury and

must allege *the particular details* of the agreement. *See Peretz v. Humana Inc.*, No. 2:08-cv-1799-HRH, 2011 WL 11053884, at *10 (D. Ariz. Apr. 8, 2011). General allegations of a conspiracy, without detailed facts to show what the alleged agreement was and when, where, and how the alleged conspiracy occurred, are insufficient. *See Vess*, 317 F.3d at 1106-07; *Peretz*, 2011 WL 11053884, at *10 (dismissing FCA conspiracy claim where complaint failed to provide details of the agreement); *United States ex rel. Capella v. Norden Systems, Inc.*, No. 3:94-CV-2063, 2000 WL 1336487, at *11 (D. Conn. Aug. 24, 2000) (dismissing FCA conspiracy claims that "merely allud[ed] to an agreement between Defendants and [did] not specify the particulars of how and when the conspiracy arose").

In the Dismissal Order, the Court directed that:

> Plaintiffs must plead factual allegations showing who *agreed* with whom to make use of a false statement for the purpose of getting the government to pay a false claim and who *agreed* with whom to present the false claim. They must plead an *agreement or overt act* by each Defendant that tends to show conspiracy.

Dismissal Order at 24 (emphasis added). Yet, the TACC does not allege "which Defendants conspired with which or any facts regarding an agreement or overt act." *Id.* at 20. In two paragraphs of factual allegations regarding the "Conspiracy between each of the Defendant Institutions and HotChalk," the Relators fail to allege *any* agreement.

- "By entering into contracts with the Defendant Institutions to operate the online degree programs, HotChalk *knew* that each of the Defendant Institutions would fraudulently certify their compliance with the HEA to the DOE in their PPAs . . ." TACC ¶ 115 (emphasis added); and
- "Each of the Defendant Institutions *knew, or should have known*, that HotChalk was paying and rewarding their employees based on the number of enrollments they secured in violation of the incentive compensation ban." *Id.* at ¶ 116 (emphasis added).

Relators' allegations of Defendants' individualized knowledge fall far short of the manifestation of mutual assent to accomplish a common and unlawful plan required to state a conspiracy claim. *See United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 51

(D.D.C. 2011) (dismissing FCA conspiracy claim where complaint was "devoid of factual allegations that support the inference that [alleged conspirators] entered into any agreements for the purpose of getting the government to pay a claim"). *See also Dimas, LLC v. Inv. Grade Loans (In re Dimas, LLC),* Case No. 02-51420-MM, 2007 WL 2127312, at *20 (Bankr. N.D. Cal. Jul. 23, 2007) ("To prevail on a claim for civil conspiracy, the plaintiff must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan."). The Court may not infer an agreement to defraud or infer an overt act from Relators' allegation that the Institution Defendants were aware (or should have been aware) of alleged improper compensation practices at HotChalk. TACC ¶ 116. The bare allegation that the Institution Defendants knew of certain alleged violations does not satisfy Rule 9(b). *See Toyobo*, 811 F. Supp. 2d at 50 (allegation that defendant was aware of alleged co-conspirator's fraudulent activities insufficient to conclude that the parties had an agreement); *United States ex rel. Raynor v. National Rural Utilities Co-op Finance Corp.,* No. 8:08CV48, 2011 WL 976482, at *12 (D. Neb. Mar. 15, 2011) (same).

Relators have had multiple opportunities to plead the basic facts of a conspiracy and have failed to do so. Under Rules 8 and 9(b), the Court cannot allow the conspiracy claim to proceed where Relators cannot show "more than a sheer possibility" that a conspiracy, in fact, existed. *Iqbal*, 556 U.S. at 678. That is the case here. The Court should dismiss Count II with prejudice.

## IV. COUNT I SHOULD BE DISMISSED WITH PREJUDICE AGAINST HOTCHALK AS RELATORS FAIL TO ALLEGE THAT HOTCHALK MADE A FALSE CLAIM.

To establish a cause of action under 31 U.S.C. §3729(a)(1)(A) or (a)(1)(B) against HotChalk, Relators must show that HotChalk "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval" (31 U.S.C. §3729(a)(1)(A)) or "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. §3729(a)(1)(B)) . However, Relators cannot show—and do not allege—that HotChalk made, or caused to

be made, to the federal government any (1) false claim for payment or approval or (2) false record or statement material to a false claim.

Relators repeatedly allege that only the Defendant Institutions falsely certified compliance with the HEA in Program Participation Agreements (PPAs), annual audit reports, and applications for financial aid. *See* TACC at ¶¶ 7(A), 8, 11, 12, 110. *None* of these allegations assert that HotChalk made any false certification or claim to the federal government. Nor do they assert that HotChalk caused the Institution Defendants to make a false certification or claim.[4]

Unlike the Institution Defendants who are alleged to have avowed compliance with the HEA, HotChalk is not alleged to have made any such avowals.[5] Indeed, the only false statements HotChalk is alleged to have made are representations *to prospective students* that HotChalk recruiting personnel were employed by the Defendant Institutions. TACC ¶ 105(a), (c). Such false statements to private parties that are not intended to induce the federal government to make a payment are not actionable under the FCA. *See Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662, 671-72 (2008) ("If a subcontractor . . . makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government.'").

Because for purposes of their Count I non-conspiracy claim, Relators allege only

---

[4] To the extent the conspiracy claim is read as an allegation that HotChalk "caused" the Institution Defendants to make a false certification, that allegation fails per the above argument in Section III. Moreover, any conspiracy claim is actionable under 31 U.S.C. §3729(a)(1)(C) (Count II) not (a)(1)(A) or (a)(1)(B) (Count I).

[5] Relators have abandoned altogether their prior theory, which the Court found unsupported, that HotChalk is a third party servicer. *See* Relators' redline of changes in TACC ("Redline") (Doc. 135-1) at 17-18 (reflecting the deletion of SACC ¶ 24 third party servicer allegations); Dismissal Order at 17-18 (finding the SACC allegations "do not allege facts showing that HotChalk administers Title IV student assistance programs . . . . [and] do not support its legal conclusion that HotChalk is a third-party servicer."). Consequently, Relators no longer allege that HotChalk independently agreed to comply with the HEA and "report violations of the law to the government." Redline at 17-18.

that the Defendant Institutions independently made false certifications of compliance to the federal government, the Court should dismiss HotChalk from Count I with prejudice.

## V. COUNT I SHOULD BE DISMISSED WITH PREJUDICE BECAUSE RELATORS FAIL TO STATE A FALSE CERTIFICATION CLAIM ADEQUATELY UNDER THE FCA.

Count I appears to allege that Defendants falsely certified to the federal government their compliance with the HEA despite allegedly: (1) violating the incentive compensation rule; (2) violating an outsourcing regulation; and (3) making substantial misrepresentations in violation of 20 U.S.C. § 1094(c)(3)(A) , 34 C.F.R. §§ 668.42-43, and 34 C.F.R. §§ 668.72-73.  In support of these claims, Relators plead dozens of allegations, many of which are conclusory, contradictory, and fail to state a claim under the statutes and regulations cited.  For the reasons discussed below, Defendants move to dismiss Count I with prejudice in its entirety.  *See United States ex rel. Bott v. Silicon Valley Colleges,* 262 F. App'x 810, 812 (9th Cir. 2008) (dismissing FCA claim where complaint failed to allege an actionable underlying violation).

### A. Relators Continue to Allege Conduct that Does Not Violate the HEA's Incentive Compensation Rule.

As the Court is aware, the incentive compensation rule provides that an institution participating in a Title IV program must "not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . to any persons or entities engaged in any student recruiting or admission activit[y] . . . ." 20 U.S.C. § 1094(a)(20).  Count I fails because it continues to allege a variety of "improper" conduct—namely, enrollment specialist discipline and termination, departures from the Defendant Institutions' standard student admission policies, giveaways of iPads, textbooks, and other scholarships to students, and distribution of graduation bonuses— which does not, as a matter of law, state violations of the incentive compensation rule.

#### 1. HotChalk's alleged discipline and termination of enrollment specialists does not violate the HEA's incentive compensation rule.

Relators allege that HotChalk violated the incentive compensation rule because

HotChalk purportedly disciplined and terminated enrollment specialists who failed to obtain a quota of enrollments. TACC ¶¶ 65-66. The Ninth Circuit has held squarely that "[t]he decision to fire an employee is not covered by the [HEA] because termination is not a prohibited 'commission, bonus, or other incentive payment.'" *Silicon Valley Colleges*, 262 F. App'x at 812 (citing 20 U.S.C. § 1094(a)(20)); *see also United States ex rel. Lee v. Corinthian Colls.,* 655 F.3d 984, 992 ("the HEA does not prohibit any and all employment-related decisions on the basis of recruitment numbers; it prohibits only a particular type of incentive compensation").

The relators in *Corinthian Colleges* alleged "that employees were 'disciplined, demoted, or terminated' on the basis of their recruitment numbers." *Id.* at 992. Yet the Ninth Circuit held that such an allegation "does not state a violation of the incentive compensation ban" because "adverse employment actions, including termination, on the basis of recruitment numbers remain permissible under the [HEA]'s terms." *Id.* at 992-993. The same conclusion applies here. This claim fails as a matter of law.

## 2. The alleged "giveaways" to students do not violate the incentive compensation rule.

As the Court noted in the Dismissal Order, "34 C.F.R. §668.14(b)(22)(iii)(C) plainly defines the persons prohibited from receiving compensation for success in securing enrollments as *employees.* Therefore, allegations regarding gifts to students fail to state a claim based on violation of the recruiter-incentive compensation ban and *should not be included in a further amended complaint*." Dismissal Order at 16 (emphasis added). Yet Relators ignored this instruction and continue to include allegations regarding "payment of incentives to students for enrollment," including "'free' iPads and textbooks when a student refers someone who also enrolls . . ." TACC ¶ 106.

Though Relators now claim that this conduct is a violation of 34 C.F.R. §668.73(c)-(d) and §668.72(j) and (o), they do not explain how giving a student a textbook or iPad in exchange for a referral is a misrepresentation concerning the cost of an educational program or the availability of financial assistance or employment

(particularly as there is no allegation that the iPad or textbook in question are part of the educational program or that HotChalk misrepresented the availability of these giveaways in exchange for student referrals).  It appears that Relators—who continue to claim that "[n]ot only are ESes rewarded based on recruitment activities, but current students are also given gifts in exchange for recruiting other students"—are trying to salvage an allegation that *the Court directed should not appear in further complaints*.  The allegation regarding "giveaways" to students failed in the SACC and fails now.  Even if the "giveaways" occurred, they could not have violated the incentive compensation rule.  Relators do not allege that students are employees of any Defendant.  Moreover, because Relators fail to allege that the giveaways were fraudulent or their availability was otherwise misrepresented, the giveaways also cannot give rise to a misrepresentation rule violation.

### 3. Allegations regarding admissions policies fail to state a violation of the incentive compensation rule.

HotChalk's alleged enrollment of students in violation of the "Defendant Institutions' standard admission policies in order to increase enrollment numbers" does not state a violation of the incentive compensation rule because Relators never allege that any Defendant made an incentive payment to a recruiter based on success in securing enrollments.  *Compare* TACC ¶ 35(A)-(D) *with* 20 U.S.C. § 1094(a)(20).  Allegations regarding HotChalk's alleged successful lobbying of UMary to lower its admission standards fail for the same reason.  *Compare* TACC ¶ 35(E)-(F) *with* 20 U.S.C. § 1094(a)(20).  At best, Relators appear to assert (*see* TACC ¶ 35(B)) that HotChalk failed to follow directions regarding the Defendant Institutions' standard admissions policies and, for that reason, may allege a breach of contract between HotChalk and the relevant Defendant Institution.  Even if true, this allegation does not state a violation of the HEA or any U.S. Department of Education ("DOE") regulation.[6]

---

[6] For the same reasons, these same allegations also fail to support Relators' parallel claim of an outsourcing violation under 34 C.F.R. 668.5(c)(3)(ii)(A).  *See* TACC ¶90(F)-(G),

#### 4. Graduation bonuses did not violate the incentive compensation rule under then applicable safe harbors.

Relators allege that, on or about January 7, 2011, HotChalk implemented a "Ramp Rate Policy" providing "that ESes would receive $100 for every student that graduated who they enrolled." TACC ¶ 54. Relators do not allege when the Ramp Rate Policy was repealed, but acknowledge that it was no longer in place as of "spring or summer of 2012." *Id.* at ¶ 50. At the time the Ramp Rate Policy was allegedly implemented, graduation bonuses were explicitly permitted under then-existing DOE regulatory safe harbors. *See* 34 C.F.R. §668.14(b)(22)(ii)(E) (2010) (allowing schools to provide incentive based compensation to employees "based upon students successfully completing their educational programs."). For this reason, the alleged implementation of the Ramp Rate Policy in January 2011 could not have violated the incentive compensation rule, and Relators fail to allege for what, if any, period the policy remained in place following the July 1, 2011 repeal of the safe harbors. Moreover, the repeal of the graduation bonus safe harbor is the subject of active litigation. The D.C. federal courts have twice sent the regulations purporting to repeal the graduation bonus safe harbor back to the DOE because those courts found the DOE's action to be unsupported and inconsistent with the intent of the HEA incentive compensation rule. *See Ass'n of Private Sector Coll. and Univ. v. Duncan,* 681 F.3d 427 (D.C. Cir. 2012); *Ass'n of Private Sector Coll. and Univ. v. Duncan,* No. 14-277, slip op. at 1, 17 (D.D.C. Oct. 2, 2014). The law is in flux and the allegations in Paragraph 54 fail to state a violation of the incentive compensation rule.

#### B. Relators Cannot Assert an FCA Claim Based on the Institution Defendants' Alleged Tender of Control of Their Educational Programs to HotChalk.

Relators have finally specified the outsourcing regulation they claim the Institution

---

(K), (M). Accordingly, Defendants also move to dismiss Relators' outsourcing violation claim arising from HotChalk's alleged failure to follow the Defendant Institutions' admissions criteria and alleged lobbying of UMary to lower its admissions criteria.

Defendants have violated.  Yet the TACC *still* fails to state a claim.  Relators assert that the Institution Defendants violated 34 C.F.R. §668.5(c)(3)(ii)(A) by purportedly contracting away more than 50% of their education programs to HotChalk, a Title IV ineligible institution.  *See* TACC ¶12(b).  This claims fails because (1) a violation of the "50% rule" is not adequately pled and, even if it were, would only state a claim against the Institution Defendants; and (2) the Court lacks jurisdiction because the claims are based on publicly disclosed facts.

### 1. Relators fail to plead an outsourcing violation adequately.

Section 668.5(c) provides in relevant part:

> If an eligible institution enters into a written arrangement with an institution or organization that is not an eligible institution under which the ineligible institution or organization provides part of the educational program of students enrolled in the eligible institution, the Secretary considers that educational program to be an eligible program if . . . (3)(ii)(A) The ineligible institution or organization provides more than 25 percent but less than 50 percent of the educational program . . . .

Although Relators allege that "HotChalk is engaged in hiring and training the faculty, conducting the marketing, determining and implementing all 'scholarship' programs, recruiting and enrolling the students and hiring sales enrollment staff" (TACC ¶87, 90(B)), Relators do not allege that HotChalk provided any organized instruction, drafted syllabi, decided what courses would be offered, graded assignments, assigned or reviewed final course grades, set degree admission or graduation requirements,[7] or made ultimate course instructor hiring, retention, or firing decisions.  In fact, beyond HotChalk's alleged recruitment and training of faculty, Relators make *no* allegations of HotChalk's involvement in the educational program once the student is recruited and classes begin.  Relators' allegations that the Defendant Institutions contracted away more than 50% of their educational programs are unsupported legal conclusions which are not

---

[7] In fact, elsewhere in the TACC, Relators acknowledge that the Defendant Institutions—not HotChalk—set the admissions policies for the Defendant Institutions' online programs.  *See* TACC ¶35.

entitled to an assumption of truth. *Iqbal*, 556 U.S. at 664. Moreover, even if Relators have adequately stated a violation of 34 C.F.R. §668.5(c)(3)(ii)(A) as to the Defendant Institutions (which they have not), these allegations fail to state a claim as to HotChalk, which is not alleged to be an eligible institution subject to 34 C.F.R. §668.5(c)(3)(ii)(A).

### 2. The Court lacks jurisdiction over Relators' outsourcing claim because it is based on publicly-disclosed facts.

"[A] district court's jurisdiction over false claims actions is specifically limited by the provisions of the FCA." *United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 521 (9th Cir. 1998). The FCA provides that "[t]he court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . (iii) from the news media, unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Information published on the Internet is publicly disclosed when the website is readily accessible. *See United States ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 32-33 (D.D.C. 2012); *see also United States ex rel. Osheroff v. Healthspring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013). Further, an original source is defined as "an individual who . . . *has knowledge that is independent and materially adds to the publicly disclosed allegations or transactions*, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B) (emphasis added). A relator has "independent knowledge" if she discovers the information firsthand, through her own eyes or own course of employment, but not through information passed along secondhand. *See United States ex rel. Devlin v. State of California*, 84 F.3d 358, 360-61 (9th Cir. 1996); *Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992).

Relators' allegations regarding HotChalk's alleged control of the Institution Defendants' programs are based on excerpts Relators have copied from HotChalk's

publicly-available website. *See* TACC at ¶¶ 86, 105.[8] Thus, Relators' claim based on such information is barred because Relators are not the original sources of that information. Relators do not allege any specific facts demonstrating that they have relevant, first-hand knowledge that each of the Institution Defendants has "ceded control" to HotChalk. Nor would the Relators be expected to have gleaned such knowledge in their position as enrollment specialists. Moreover, the three Relators do not explain which Relator is the putative original source for which allegation.

Relators cannot state a proper FCA claim based upon information obtained from HotChalk's website. *See Green*, 843 F. Supp. 2d at 32-33. The court lacks jurisdiction to hear this claim and should dismiss it with prejudice pursuant to Rule 12(b)(1).

### C.     Relators Cannot State a Claim Under the FCA Based On Any Alleged "Misrepresentations."

Finally, Count I also fails to the extent that it is based on "misrepresentations" that Defendants allegedly made in violation of 20 U.S.C. § 1094(c)(3)(A) and 34 C.F.R. §§668.42-43 and 668.72-73. Not only have Relators failed to plead the alleged "misrepresentations" with specificity, but the statements on which the claims are based are not prohibited by the HEA.

*First*, Relators allege that HotChalk offers "misleading" scholarships to prospective students that amounted to nothing more than a discount of the tuition prices. TACC ¶¶ 72, 96-97. However, a credit against the cost of tuition is a scholarship. *See* 26 C.F.R. § 1.117–3(a) ("A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, . . . to aid such individual in pursuing his studies."). Relators do not allege that HotChalk never intended to provide the scholarships, or that the

---

[8] The TACC tries to finesse the defect by paraphrasing the public website language with excerpted phrases. For example, instead of basing their outsourcing claim on HotChalk's public statement that it provides a "unique, turnkey partnership opportunity which removes the barriers to growing your degree programs online," the TACC offers an equally insufficient revised allegation that HotChalk touts its ability to provide institutions with a "turnkey partnership opportunity" by providing various services, including website setup. *See, e.g.,* TACC ¶ 86.

scholarships were not given, or that tuition rates were higher than represented. TACC ¶¶ 72, 96-97. There is no "misrepresentation" here that triggers 34 C.F.R. § 668.73 because there is nothing alleged that was "false, erroneous, or misleading" concerning an offer "to pay all or part of a course charge." 34 C.F.R. § 668.73. As the Court noted in the Dismissal Order, "Plaintiffs do not explain why referring to tuition discounts as 'scholarships' constitutes a misrepresentation under the HEA; they only imply that true scholarships require students to earn them." Dismissal Order 19:3-5. In response, Relators allege only that "[t]he act of giving a 'scholarship' as a discount, without telling all the potential students that they too would qualify for the 'scholarship' were they to ask about a cheaper price, is a misrepresentation of the cost of the program to the prospective students who were not offered the tuition discounts." TACC at ¶ 97. However, 34 C.F.R. § 668.73 contains no such requirement of affirmative disclosure—or scholarships for all—to students who did not request information about scholarships. *See* 34 C.F.R. § 668.73. Moreover, Relators still fail to explain why the characterization of tuition discounts as scholarships is a substantial misrepresentation—a pleading deficiency noted in the Dismissal Order. *See* Dismissal Order at 19:17-21 ("Count I does not satisfy the pleading requirements of Rules 8(a) and 9(b) because it does not give fair notice of . . . how the alleged misrepresentations are 'substantial.'").

*Second,* Relators allege that HotChalk concealed its identity, represented itself as the Institution Defendants when it interacted with potential students, and lied about the location of the HotChalk representatives calling prospective students. TACC ¶¶ 105. None of these allegations are among the topics enumerated under sections 668.72, 668.42, or 668.43. Relators' intuitive leap that "[t]he Defendants' misrepresentations are substantial because no reasonable person would apply, enroll and pay to go to any of the Defendant Institutions if s/he knew s/he was really 'going to' HotChalk, an undisclosed, 'secret' partner of the Defendant Institutions" is entirely unsupported. *Id.* at ¶ 107. As discussed earlier, beyond allegations that HotChalk was involved in hiring and training of the faculty, Relators plead no allegations regarding HotChalk's involvement in the

educational program once the student is recruited and begins classes. Relators' claims that HotChalk was responsible for more than 50% of the Defendant Institutions' educational programs and that the Defendant Institutions' students were allegedly "going to" HotChalk rather than attending the Defendant Institutions are unsupported by Relators' specific factual allegations. Relators fail to explain why the specific factual misrepresentation allegations pled here – that HotChalk recruiters appeared to students to be employees of the Defendant Institutions – amount to a substantial misrepresentation actionable under the HEA.

Neither of these "misrepresentations" can give rise to Relators' false certification claim. To the extent Count I is based on Relators' "misrepresentation" claims set forth in TACC ¶¶ 97, 105, 107, those claims should be dismissed with prejudice.

## VI. COUNT III SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT STILL FAILS TO PLEAD A RETALIATION CLAIM UNDER THE FCA.

The FCA provides a cause of action for anyone who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" as a result of involvement in a *qui tam* suit. 31 U.S.C. § 3730(h)(1). To state a claim, a relator must sufficiently allege: (1) plaintiff's actions were taken in furtherance of a *qui tam* cause of action; (2) the employer knew of these actions; and (3) that the employer discharged the plaintiff because of these actions. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996). Further, the alleged retaliatory activity must have a nexus with the whistleblower activity defined in the statute. *See McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 515-16 (6th Cir. 2000). As the Court found in the Dismissal Order:

> Regarding Count III of the SACC, Plaintiff Calisesi must plead what protected action she was engaging in, what adverse employment action was taken against her, that her employer must have known she was engaging in the protected action, and that the adverse employment action must have been taken as a result of her protected action.

Dismissal Order at 25:1-5. While the TACC does, for the first time, plead factual

allegations in support of Count III (which were absent in prior versions of the complaint), these allegations still fail to state a claim under 3730(h).

First, Calisesi fails to plead that she was engaged in protected action, *i.e.,* that she was attempting to uncover or report fraud on the federal fisc. *See Hopper,* 91 F.3d at 1269 ("Section 3730(h) only protects employees who have acted 'in furtherance of an action' under the FCA."). While "[s]pecific awareness of the FCA is not required . . . the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Id.* Here, Calisesi merely pleads that, on or about April 25, 2013, she discussed whether she was required to sign the "HotChalk Privacy, Confidentiality, and Information Security Policy" with HotChalk's compliance department and that, when she did eventually sign the same, she handwrote her points of disagreement with that document. TACC ¶¶ 119-120, 123. Notably, Calisesi, like the relator in *Hopper* whose retaliation claim failed*,* "was not trying to recover money for the government . . . was not investigating fraud . . . [and] was not whistleblowing as envisioned in the paradigm *qui tam* FCA action." *Hopper,* 91 F.3d at 1269. In fact, Calisesi does not allege 1) that the internal "HotChalk Privacy, Confidentiality, and Information Security Policy" has "any nexus to the FCA" or 2) that she communicated, or even believed, that HotChalk was violating the HEA at the time or, as required to state a claim under 3730(h), that HotChalk was presenting false claims for payment to the federal government. *Id.* (relator's retaliation claim not actionable where "[h]er investigatory activity did not have any nexus to the FCA"). Rather, Calisesi alleges that she believed she could not comply with HotChalk's internal Privacy, Confidentiality, and Information Security Policy and that certain statements in that policy were false. TACC ¶¶ 120-123. Accordingly, Calisesi has not pled that she was engaged in protected action under Section 3730(h).

Second, Calisesi fails to plead that any adverse employment action was taken against her as a result of her allegedly protected action. While Calisesi alleges that she was asked to work overtime on a Saturday to catch up to alleged enrollment expectations and "hit her number," and that she was asked to account for periods of time during the

workday when she was not making calls at her phone-based job, neither amounts to an actionable adverse employment action. *Id.* at ¶¶ 129, 132. (In fact, in contradiction to her Count III narrative suggesting overtime was a response to low enrollments, Calisesi also alleges that overtime was a form of incentive compensation and a reward for high enrollers. *Id.* at ¶¶ 43-46. Was overtime a penalty, or a prize?) Further, Calisesi admits that she was already subject to a performance improvement plan (allegedly for poor enrollment numbers in the previous enrollment cohort) prior to her alleged April 25, 2013 protected action, and she fails to show that the alleged request to work additional hours and the alleged questioning of her productivity resulted from her protected action and would not otherwise flow from her being on a performance improvement plan. *Id.* at ¶¶ 123(B), 126. Finally, Calisesi admits that she quit of her own accord during a conversation with HotChalk executive (and former Defendant) Mark Zinselmeier. *Id.* at ¶¶ 133. By Calisesi's own admission, far from being shown the door, Zinselmeier instead urged her to reconsider her decision to quit and offered to discuss her concerns further the next business day. *Id.* Accordingly, Calisesi has failed to plead that HotChalk took adverse employment action against her or, even if it did, that the adverse employment action was taken as a result of her alleged protected action on April 25, 2013.

Because Calisesi has failed to plead that: 1) she was engaged in protected action; 2) HotChalk took adverse employment action against her; or 3) the adverse employment action, if any, was taken in retaliation for her alleged protected action (any of which alone would be fatal to her claim), Calisesi's claim retaliation claim under Section 3730(h) should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## VII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the TACC pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and 8.

Dated: June 22, 2015

By s/ Laura M. Kam
    Mark A. Nadeau
    Laura M. Kam
    Ronald D. Roach
    **DLA PIPER LLP (US)**
    2525 East Camelback Road, Ste. 1000
    Phoenix, AZ 85016-4232

*Attorneys for Defendant HotChalk, Inc.*

By: s/ Howard R. Cabot
    Howard R. Cabot
    Jessica L. Everett-Garcia
    **PERKINS COIE LLP**
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788

    Jeremy D. Sacks
    Reilley D. Keating
    **STOEL RIVES LLP**
    900 SW Fifth Ave, Suite 2600
    Portland, Oregon 97204-1268

*Attorneys for Defendant Concordia University - Portland*

By: s/ Echo Adrien Orcutt
    Echo Adrien Orcutt
    Paul Sullivan Gerding, Jr.
    **KUTAK ROCK LLP**
    8601 N Scottsdale Rd., Ste. 300
    Scottsdale, AZ 85253-2742

*Attorneys for Defendant University of Mary*

By: s/ William G. Fairbourn

William G. Fairbourn
**BONNET FAIRBOURN FRIEDMAN & BALINT, PC**
2325 E. Camelback Road, Ste. 300
Phoenix, AZ 85016

*Attorneys for Defendant Concordia College*


By: s/ Steven D. Davidson

Steven D. Davidson
**BAIRD HOLM LLP**
1700 Farnam Street, Ste. 1500
Omaha, NE 68102-2068

*Attorneys for Defendant Concordia University – Nebraska*

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2015, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following CM/ECF registrants:

Todd F. Lang
**US ATTORNEY'S OFFICE**
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004
*Attorneys for United States of America*

Howard R. Cabot
Jessica L. Everett-Garcia
**PERKINS COIE LLP**
2901 North Central Avenue, Ste. 2000
Phoenix, AZ 85012-2788

Jeremy D. Sacks
Reilley D. Keating
**STOEL RIVES LLP**
900 SW Fifth Ave, Ste. 2600
Portland, OR 97204-1268
*Attorneys for Defendant Concordia University - Portland*

Steven D. Davidson
**BAIRD HOLM LLP**
1700 Farnam Street, Ste. 1500
Omaha, NE 68102-2068
*Attorneys for Defendant Concordia University – Nebraska*

Echo Adrien Orcutt
Paul Sullivan Gerding, Jr.
**KUTAK ROCK LLP**
8601 N Scottsdale Rd., Ste. 300
Scottsdale, AZ 85253-2742
*Attorneys for Defendant University of Mary*

William G. Fairbourn
**BONNET FAIRBOURN FRIEDMAN & BALINT, PC**
2325 E. Camelback Road, Ste. 300
Phoenix, AZ 85016
*Attorneys for Defendant Concordia College*

Troy B. Froderman
Carlyle W. Hall, III
**POLSINELLI PC**
1 E. Washington, Ste. 1200
Phoenix, AZ 85004

J. Mark Brewer
A. Blaire Hickman
**BREWER & PRITCHARD PC**
3 Riverway, Ste. 1800
Houston, TX 77056
*Attorneys for Plaintiff Regina Calisesi*

Ashley M. Spencer
Bonnie E. Spencer
Dawn R. Meade
**SPENCER LAW FIRM**
4635 Southwest Fwy., Ste. 900
Houston, TX 77027
*Attorneys for Plaintiffs Jeffri Bolton and Toi*

s/ April Natzke