## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Education (the "United States"), HotChalk, Inc. and Concordia University – Portland ("Defendants"); and Regina Calisesi, Toi, and Jeffri Bolton ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.     Concordia University – Portland ("Concordia") is a not-for-profit university located in Portland, Oregon that offers undergraduate and graduate degree programs through its Portland campus and several online degree granting programs. Concordia is an eligible institution under the Higher Education Act whose students receive Title IV financial aid funds administered by the Department of Education.

B.     HotChalk, Inc. ("HotChalk") is a private for-profit corporation incorporated in Delaware that provides certain services to universities, including Concordia. HotChalk provides solutions for universities interested in developing and operating online degree programs. HotChalk's contract with Concordia provides HotChalk with a share of tuition generated from the online degree programs, including Title IV funds administered by the Department of Education.

C.     On June 6, 2013, Regina Calisesi, Toi, and Jeffri Bolton filed a *qui tam* action in the United States District Court for the District of Arizona captioned *United States ex rel*. *Regina Calisesi, et al. v. HotChalk, Inc., et al.*, CV-13-1150-PHX-NVW, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("the

Civil Action").  Relators Calisesi, Toi, and Bolton (collectively "Relators") alleged on

behalf of the United States that HotChalk, Concordia, and other universities contracting

with HotChalk had violated 20 U.S.C. § 1094(a)(20), 34 C.F.R. § 668.14(b)(22), 20

U.S.C. § 1094(c)(3)(A), and 34 C.F.R. § 668.74.  Relators and the United States contend

that they have certain civil claims against HotChalk and Concordia arising from

outsourcing of Concordia educational programs, incentive compensation paid to

Concordia students, prohibited tuition sharing with HotChalk, and prohibited incentive

compensation paid to HotChalk employees during the period from 2009 through the

Effective Date of this Agreement. Relators alleged that HotChalk and its university

partners had violated the incentive compensation ban and had made material

misrepresentations about the nature of financial charges during the course of their

relationships.  Additionally, Relators alleged *inter alia* that HotChalk paid its recruiters

based on the number of students they enrolled and that HotChalk, with the consent of

HotChalk's university partners, misrepresented the availability of scholarships at partner

universities and misrepresented that HotChalk employees were actually employees of a

partner university, such as Concordia.  The conduct described in this Paragraph is

referred to below as "the Covered Conduct."

   D.  This Settlement Agreement is made in compromise of disputed claims.

The Relators and the United States acknowledge, based on representations made by

Concordia, that Concordia has achieved high graduation rates and very low student loan

default rates in online programs supported by HotChalk. This Settlement Agreement is

neither an admission of facts or liability by HotChalk or Concordia nor a concession by

the United States or Relators that their claims are not well founded.  HotChalk and

Concordia expressly deny the allegations in the Civil Action and the contentions of the United States in paragraph C above, and deny that they have engaged in any wrongful conduct. Neither this Agreement, its execution, nor the performance of any obligation under its terms, including any payment, nor the fact of settlement, are intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute.

E.      Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement. This Settlement Agreement does not preclude Relators' entitlement to reasonable expenses, attorneys' fees, and costs pursuant to 31 U.S.C. §3730 (d).  HotChalk and Concordia do not contest that the Relators are entitled to their reasonable expenses, attorneys' fees, and costs under 31 U.S.C. §3730(d). HotChalk and Concordia reserve the right to challenge the reasonableness of the attorneys' fees.

F.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Defendants, severally and not jointly, agree to pay the United States one million dollars ($1,000,000.00) (the "Total Settlement Amount") as follows:  Concordia agrees to pay five hundred thousand dollars ($500,000) ("the Concordia Settlement Amount") and HotChalk agrees to pay five hundred thousand dollars ($500,000) (the "HotChalk Settlement Amount").

a.      On the Effective Date of this Agreement, pursuant to payment instructions provided by the United States, Defendants will each pay to the United States $125,000, for a total of two-hundred fifty thousand dollars ($250,000.00).

b.      Beginning one year from the Effective Date, over a period of 3 years Defendants will pay the remaining seven-hundred fifty thousand dollars ($750,000.00), plus interest at 1.0% per annum, pursuant to a promissory note ("the Note") in the form of Exhibit A, that Defendants agree to execute contemporaneously with this Settlement Agreement.  The total amount paid collectively by the Defendants each year shall be no less than $250,000.00.

c.      The Note shall be secured pursuant to a Stipulation of Judgment in the form of Exhibit B that Defendants agree to cause to be issued contemporaneously with this Settlement Agreement.  In the event that Defendants breach this agreement either by failing to make a timely payment or by violating the substantive terms in this agreement regarding recruitment, the United States may give a thirty (30) day notice of its intent to file the stipulated judgment.  If the breach is not remedied within thirty days of service of the notice, the United States may file the stipulated judgment. For avoidance of doubt, if the United States files the Stipulation of Judgment pursuant to this Paragraph, the Relators will be entitled to 25% of any recovery under that stipulated judgment.

d.      Interest shall accrue on the unpaid settlement amount as indicated in the Note.  Collectively, the settlement amount and interest received by the United States shall be referred to as "the Settlement Proceeds."

2.      HotChalk and Concordia have each agreed to abide by certain terms to ensure compliance with 20 U.S.C. § 1094(a)(20) (the "incentive compensation ban"), 34

C.F.R. § 668.5 (the "outsourcing ban"), and related regulations.  These terms (hereinafter referred to as "the Compliance Terms") will last for the duration of payments (4 years) and include:

        a.        Incentive Compensation for Student Recruiters

        (1)        HotChalk and Concordia agree to modify their Peer Mentor Program (formerly known as the Study Buddy Program) to ensure that any new tuition discount or scholarship provided after September 1, 2015 to students who engage in mentorship of another student is available only if:

        (i)        Concordia authorizes and directs the tuition discount or scholarship program;

        (ii)        the discount is made available to a participating student regardless of whether the student enrolls concurrently with another student;

        (iii)        the discount is not conditioned in any way upon a student's recruitment of another student;

        (iv)        prospective participants are told that recruiting another student to apply or enroll is not in any way a condition or factor in the awarding of any discount or scholarship; and

        (v)        prospective participants qualify for the tuition or scholarship only if they are already enrolled in an online program.

        (2)        HotChalk and Concordia agree to modify their referral reward program, currently known as the Ambassador Program, to ensure the immediate and permanent elimination of all monetary rewards programs for leads or referrals.  For the purposes of this Settlement Agreement and the Consent Decree, HotChalk and

Concordia have agreed to interpret the incentive compensation ban as reaching non-employee students.  To avoid compensation of any kind for solicitation by students, any and all compensation programs for students, including the Ambassador Program, shall not provide payments of rewards based directly or indirectly on success in securing enrollments or financial aid.

        b.        Incentive Compensation

        (1)        HotChalk agrees to exclude all personnel covered by the incentive compensation ban from any corporate bonus plan.

        c.        Incentive Tuition Share Increase

        (1)        Concordia agrees to continue to pay HotChalk a fixed percentage of revenue generated from tuition for a variety of bundled services, and the revenue share percentage shall not vary nor be altered in connection with enrollment numbers.

        d.        Additional HotChalk Incentive Compensation Controls

        (1)        HotChalk agrees to continue to pay employees covered by the incentive compensation ban according to a schedule of lockstep, seniority-based salary increases.

        (2)        HotChalk agrees to conduct annual training of its workforce to ensure awareness of the incentive compensation ban.

        (3)        HotChalk agrees to continue to make available to employees a telephone hotline allowing employees to provide anonymous feedback to the company on compliance matters.

        e.        The Outsourcing Ban and Control of Faculty

(1)     HotChalk and Concordia agree that Concordia will determine in its sole and unfettered discretion all Concordia faculty compensation rates and policies, and will continue to act as the employer and supervisor for all Concordia faculty.  HotChalk shall not provide direct compensation to any faculty or other academic personnel of Concordia.  HotChalk shall not exercise any control over Concordia faculty.  Concordia shall retain full authority and unfettered discretion in Concordia faculty hiring, management, and compensation policies.  All faculty shall be employed directly by Concordia in accordance with the requirements of the Accreditation Council for Business Schools & Programs, Northwest Commission on Colleges and Universities, Oregon State Teacher and Standards Practices, Council for the Accreditation of Educator Preparation, Commission on Collegiate Nursing Education, and Council on Social Work Education.

(2)     HotChalk agrees that to the extent HotChalk's bundled services allow it to play a role in administrative, scheduling, recruiting, or other support services for online faculty, such services shall be performed only as directed by Concordia.

f.     The Outsourcing Ban, Dear Colleague Letter, and Hiring, Employment, and Supervision of Online Faculty

(1)     Concordia shall retain and exercise full authority and unfettered discretion in making hiring decisions, supervising and evaluating Concordia faculty, and determining compensation plans for Concordia faculty, who shall be employed by Concordia.

(2)     Concordia agrees that all Concordia online faculty will continue to report directly to and will continue to be reviewed by individuals employed by Concordia and not employed by HotChalk.

g.     Cross-Employment of Concordia Personnel

(1)     Concordia and HotChalk agree that no individual employed by Concordia shall be employed by or report to HotChalk while such individual remains employed by Concordia.

h.     HotChalk's Involvement in Curriculum Creation

(1)     Concordia agrees to continue exercising final authority over the development and approval of all curricular materials for Concordia.  All curricular materials and content shall be provided by Concordia under processes approved by its accreditor.  Concordia shall reserve all academic rights with respect to such materials, will regularly review all curricula, and will make all decisions regarding the content and usage of curricular materials in its academic programs.

(2)     Concordia agrees to continue exercising full academic control over its curricula and online faculty. Curricula will be approved *only* by Concordia employees and HotChalk employees will play no role in approval.

(3)     HotChalk agrees that to the extent HotChalk's bundled services allow it to offer services related to course development or support, such services shall be performed only as directed by Concordia.

i.     Accreditation and Contracting Out

(1)     Concordia shall request a review and determination by its

accreditor(s) that the arrangement with HotChalk complies with all requirements for contractual arrangements with non-accredited entities.

(2)     Concordia warrants that it is currently in compliance with 34 C.F.R. 668.5(c) and will demonstrate its compliance when requested by the Department of Education.

j.     Determination of Enrollment Numbers

(1)     Concordia shall continue to be solely responsible for making final decisions about enrollment targets for its programs.  HotChalk shall not exercise any control over Concordia's decision making, but may provide Concordia with input regarding those targets based on market research and analysis.

(2)     Concordia shall continue to determine in its sole discretion whether or not to implement maximum enrollment limits for its online programs. Concordia shall admit students to its online classes only if it already has faculty vetted and available to teach such classes.

k.     Alleged Delegation of Admissions Decisions and Alleged "Auto-Enrollment"

(1)     Concordia shall continue to make all admissions decisions for Concordia programs.  HotChalk's role in admissions decisions shall be limited solely to gathering information to allow Concordia to make such decisions.  The admission of any potential student will be determined individually by Concordia and shall not be determined by HotChalk.

(2)     Concordia shall determine the admission of each student individually.  Neither HotChalk nor Concordia shall "auto-enroll" any student.

l.      University Program Management

(1)      At least every twelve (12) months, Concordia shall secure the services of a third party provider qualified in university or college accreditation with credentials acceptable to the United States ("Provider") to undertake a comprehensive review ("Program Review") of each online program supported by HotChalk and shall instruct HotChalk to provide relevant data and reports related to HotChalk's services. This person must be approved by the Department of Education before beginning the review.

(2)      The Provider shall be responsible for providing an opinion regarding the compliance of Concordia and HotChalk with the terms of this Settlement Agreement.

(3)      Within thirty (30) days of the completion of an annual Program Review, the Provider shall provide the United States Attorney for the District of Arizona and the U.S. Department of Education with a written report identifying any material noncompliance by Concordia or HotChalk.

(4)      In the event alleged material noncompliance is identified by the Provider, HotChalk and/or Concordia may appeal the determination consistent with the existing appeal policies of the Department of Education.  HotChalk and Concordia agree that they will make any changes required by the Department of Education and will pay any liabilities that the Department of Education may reasonably identify that flow from any final material noncompliance finding, including following an appeal.

(5)      The goals of each Program Review shall additionally include:

(i)     reviewing program and course objectives, student outcomes (including retention rates), student and instructor satisfaction, and program financial results;

(ii)    ensuring Concordia possesses adequate data and information to make decisions in its unfettered discretion regarding the instructional content of its online programs; and

(iii)   enabling Concordia to monitor HotChalk services.

m.     Third-Party Servicer Regulations and Requirements

(1)     Concordia agrees that it shall continue to employ and manage all personnel involved in financial aid.  All financial aid personnel will report to employees of Concordia and will not report to or otherwise be supervised by HotChalk employees.  HotChalk shall have no substantive role in any financial aid decisions.

(2)     Concordia employees responsible for financial aid will be stationed at Concordia or at a location approved by Concordia and will not be embedded or co-located with HotChalk at a HotChalk facility.  Such employees shall be supervised by Concordia officials.

3.     Conditioned upon the United States receiving the Settlement Amount payments from HotChalk and Concordia, the United States agrees that it shall pay to Relators by electronic funds transfer 25% of each such payment received under the Settlement Agreement, or received pursuant to the Stipulation of Judgment referred to in Paragraph 1(c), as soon as feasible after receipt of the payment.

4.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon HotChalk and Concordia's full payment of the Settlement

Amount described in Paragraph 1(a) above, and further conditioned upon HotChalk and Concordia's compliance with the Compliance Terms, and subject to Paragraph 16 below (concerning bankruptcy proceedings commenced within ninety-one (91) days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases HotChalk and Concordia, and each of their officers, directors, representatives, agents, current employees, and those who were employed at the time of the Covered Conduct, from any civil or administrative claim the United States has or may have for the Covered Conduct, under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 6 below, and conditioned upon HotChalk and Concordia's full payment of the Settlement Amount described in paragraph 1(a) above, and further conditioned upon HotChalk and Concordia's compliance with the Compliance Terms, and subject to Paragraph 16 below (concerning bankruptcy proceedings commenced within ninety-one (91) days of the Effective Date of this Agreement or any payment made under this Agreement), Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release HotChalk and Concordia, and each of their officers, directors, representatives, agents, current employees, and those who were employed at the time of the Covered Conduct, from any civil claim the Relators have or may have on behalf of the United States, under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the Covered Conduct and for any claims that were brought in the Civil Action except for Relator Calisesi's retaliation claim alleged in

the Civil Action and Relators' claim for reasonable attorneys' fees, expenses, and costs, which are explicitly excluded from this Paragraph.

6.      Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

        a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.      Any criminal liability;

        c.      Except as explicitly stated in this Agreement, administrative liability, including the suspension and debarment rights of any federal agency;

        d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

        e.      Any liability based upon obligations created by this Agreement, including liability based on violations of the Compliance Terms;

        f.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

        g.      Any liability for failure to deliver goods or services due;

        h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and

reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

Conditioned upon Relators' receipt of the first payment described in Paragraph 3,

Relators and their heirs, successors, attorneys, agents, and assigns fully and finally

release, waive, and forever discharge the United States, its agencies, officers, agents,

employees, and servants, from any claims arising from the filing of the Civil Action or

under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this

Agreement and/or the Civil Action.

      8.     HotChalk and Concordia have provided sworn financial disclosure

statements ("Financial Statements") to the United States and Relators and the United

States and Relators have relied on the accuracy and completeness of those Financial

Statements in reaching this Agreement.  HotChalk represents and warrants that the

Financial Statements it has provided present fairly, in all material respects, its financial

position for the periods indicated therein.  Concordia represents and warrants that the

Financial Statements it has provided present fairly, in all material respects, its financial

position for the periods indicated therein.  If (i) the United States learns of asset(s) in

which HotChalk or Concordia had an interest at the time of this Agreement that were not

disclosed in the Financial Statements, or the United States learns of any

misrepresentation by HotChalk or Concordia on, or in connection with, the Financial

Statements, and if (ii) such nondisclosure or misrepresentation pertains to asset(s) that

increase the estimated net assets (as defined in accordance with Generally Accepted

Accounting Principles) set forth in the Financial Statements by $50,000 or more, then the

United States may at its option:  (a) rescind this Agreement and file suit based on the

Covered Conduct, or (b) let the Agreement stand and collect from the party committing

the nondisclosure or misrepresentation relating to the sworn financial statements it provided the full Settlement Amount plus one hundred percent (100%) of the value of the net assets of HotChalk or Concordia which was previously undisclosed.  HotChalk and Concordia agree to pay the United States all reasonable costs incurred in any successful collection action undertaken by the United States pursuant to this provision, including reasonable attorneys' fees and expenses.

9.      Concordia certifies that certain financial aid loan default information provided to the United States and Relators is based on data published by the U.S. Department of Education and that Concordia relied upon such published data to derive the financial aid loan default rates.

10.      In the event that the United States, pursuant to Paragraph 8 (concerning disclosure of assets) above, opts to rescind this Agreement, HotChalk and Concordia agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within sixty (60) calendar days of written notification to HotChalk or Concordia that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on June 6, 2013.

11.      HotChalk and Concordia waive and shall not assert any defenses HotChalk or Concordia may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12.     HotChalk and Concordia fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that HotChalk or Concordia have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.     HotChalk and Concordia fully and finally release Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that HotChalk and Concordia have asserted, could have asserted, or may assert in the future against the Relators, related to Relators' investigation and prosecution of the Civil Action.

14.     HotChalk and Concordia agree to the following:

        a.      Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of HotChalk and Concordia, and its present or former officers, directors, employees, shareholders, and agents in connection with:

                (1)     the matters covered by this Agreement;

                (2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     HotChalk and Concordia's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payments HotChalk and Concordia make to the United States pursuant to this Agreement and any payments that HotChalk or Concordia may make to Relators, including attorneys' fees and costs;

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by HotChalk and Concordia, and HotChalk and Concordia shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.     Treatment of Unallowable Costs Previously Submitted for Payment:  Within ninety (90) days of the Effective Date of this Agreement, HotChalk and Concordia shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by HotChalk, Concordia, or any of their subsidiaries or affiliates from the United States.  HotChalk and Concordia agree that the United States, at a minimum, shall be entitled to recoup from HotChalk and Concordia any overpayment plus applicable interest and penalties as a

result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine HotChalk and Concordia's books and records and to disagree with any calculations submitted by HotChalk, Concordia, or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by HotChalk or Concordia, or the effect of any such Unallowable Costs on the amount of such payments.

15.    HotChalk warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall make commercially reasonable efforts to  remain solvent following payment to the United States of the HotChalk Settlement Amount.  Concordia warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall make commercially reasonable efforts to  remain solvent following payment to the United States of the Concordia Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to HotChalk and Concordia, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud

any entity to which HotChalk or Concordia was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

16.     If within ninety-one (91) days of the Effective Date of this Agreement or of any payment made under this Agreement, HotChalk or Concordia commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (i) seeking to have any order for relief of HotChalk or Concordia's debts, or seeking to adjudicate HotChalk or Concordia as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for HotChalk or Concordia or for all or any substantial part of HotChalk or Concordia's assets, HotChalk and Concordia agree as follows:

a.      HotChalk and Concordia's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) HotChalk or Concordia's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) HotChalk or Concordia was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to HotChalk or Concordia.

b.      If HotChalk or Concordia's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against HotChalk or Concordia, as appropriate, for the claims that

would otherwise be covered by the releases provided in Paragraphs 4 and 5, above. HotChalk and Concordia agree that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and HotChalk and Concordia shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) HotChalk and Concordia shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within 60 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on June 6, 2013; and (iii) the United States has a valid claim against Defendants in the amount of $1 million less any amounts paid pursuant to this Agreement, and the United States may pursue its claim in the case, action, or proceeding referred to in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.     HotChalk and Concordia acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

17.     This Agreement is intended to be for the benefit of the Parties only.

18.     Upon receipt of the payment described in Paragraph 1(a), above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action with Prejudice pursuant to Rule 41(a)(1).

19.     Defendants and the United States shall bear their own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement. This does not preclude Relators' entitlement to reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. §3730 (d).

20.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Arizona.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23.     The Parties acknowledge and warrant that they have had the opportunity to consult with independent counsel of their own choice prior to execution of this Agreement.

24.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25.     This Agreement is binding on HotChalk and Concordia's successors, transferees, heirs, and assigns.

26.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

27.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28.     This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date" of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 8/20/15   BY:   _____

**TODD F. LANG**
**Assistant United States Attorney**
**District of Arizona**

<u>**HOTCHALK, INC. – DEFENDANT**</u>

DATED: 8/20/15 BY: _____

Edward Fields
**Chief Executive Officer**

DATED: 8/20/15 BY: _____ (approved as to form)

Ronald Roach
**Counsel for HotChalk, Inc.**

**CONCORDIA UNIVERSITY-PORTLAND – DEFENDANT**

DATED: _____8/20/15_____ BY: _____

          **Jilma Meneses**
          **Executive Vice President, Chief Operating Officer &**
          **Chief General Counsel**

DATED: _8/20/15_ BY: _____ (approved as to form)

          **Jeremy Sacks**
          **Counsel for Concordia University - Portland**

**REGINA CALISESI – RELATOR**

DATED: 8.20.15 BY: _____
                          Regina Calisesi

DATED: 8/20/2015 BY: _____
                          Cary Hall
                          Counsel for Regina Calisesi

**TOI - RELATOR**

DATED: 8/20   BY: _____
                  Toi

DATED: 8/20   BY: _____
                  Counsel for Toi

**JEFFRI BOLTON - RELATOR**

DATED: 8/20   BY: _____
                  Jeffri Bolton

DATED: 8/20   BY: _____
                  Counsel for Jeffri Bolton

# EXHIBIT A

## **Promissory Note**

1.      For value received,  and pursuant to a Settlement Agreement dated August 20, 2015 attached hereto (Settlement Agreement), entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Education ("Holder"), HotChalk, Inc., a Delaware corporation, Concordia University, an Oregon public benefit corporation, and Regina Calisesi, Toi, and Jeffri Bolton, in reference to a *qui tam* action in the United States District Court for the District of Arizona captioned *United States ex rel. Regina Calisesi, et al. v. HotChalk, Inc., et al.*, CV-13-1150-PHX-NVW, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), HotChalk, Inc. ("Maker"), for itself and its successors and assigns, promises to pay to Holder, or its assignee, the aggregate principal sum of $500,000.00, together with interest  as set forth below (collectively, as reduced from time to time, the "Outstanding Balance").  Maker's obligations under this Promissory Note (the "Obligations") are several from, and not joint with, the obligations of Concordia University under a similar promissory note of even date herewith, in the amount of $500,000.00.  Payments under this Promissory Note will be paid in the amounts and on the dates specified in the following chart:

Schedule of Payments (including interest)

|  | PAYMENT | PRINCIPAL | INTEREST | BALANCE |
|---|---|---|---|---|
| BEGINNING BALANCE |  |  |  | $500,000 |
| Initial Payment (due on or before August 30, 2015). | $125,000 |  |  | $375,000 |
| Payment Two (due on or before August 30, 2016) | $125,000 |  | $3,750 | $253,750 |
| Payment Three (due on or before August 30, 2017) | $125,000 |  | $2,537.50 | $131,287.50 |
| Payment Four (due on or before June 30, 2018) | $131,287.50 |  |  | $0 |

2.      Payments will be made by wire transfer in the amounts and on the dates specified in paragraph 1 above.  If there is any change in the method or instructions of payment, Holder shall inform the Maker at least 5 business days before payment is due.

3.      This Promissory Note may be prepaid, in whole or in part, without penalty or premium. Partial payment does not alter the interest amount due each year as reflected in paragraph 1 of this Promissory Note.

4.      Default, Events.  Any of the following events shall be considered an "Event of Default" under this Promissory Note:

    (a)      Payment - default (other than a default resulting from a force majeure event) in the payment when due of any of the Obligations hereunder, which default is not cured within three (3) business days; or

    (b)      Representations and Warranties - any representation or warranty made by Maker in this Promissory Note or made by Maker in any statement furnished in connection with this Promissory Note proves to have been incorrect in any material respect as of the date made; or

    (c)      Receivership - the application for the appointment of a receiver, trustee, liquidator, conservator, rehabilitator, or similar individual, officer or committee of, or for any property of, Maker; or

    (d)      Bankruptcy Proceedings - the commencement of any proceeding, suit or action under any provisions of the Title 11 of the U.S. Code, as amended, or any similar statute, for adjudication as a bankrupt, reorganization, extension, arrangement, or adjustment of debts of Maker; or

    (e)      Act of Bankruptcy - the admission in writing by Maker of its inability to pay, or Maker's inability to pay, or Maker generally not paying, its debts as they become due.

5.      Maker shall provide Holder written notice of an Event of Default within two (2) business days after the occurrence of such event by overnight mail, delivered to the  Office of the United States Attorney for the District of Arizona (USAO), at 40 N. Central Ave., Suite 1200, Phoenix, AZ 85004-4408.

6.      Upon the occurrence of an Event of Default, without further notice or presentment and demand by Holder:

    A.      Subject to the cure period set forth in Section 1(c) of the Settlement Agreement and Maker's failure to perform thereunder, the Outstanding Balance shall become immediately due and payable ("Default Amount").  Interest shall accrue on the Default Amount at a rate of 12 percent per annum, from the date of the Event of Default until the date the Obligations are paid in full, pursuant to the Stipulation of Judgment or otherwise.

B.      Holder may take any and all actions provided under law and equity, or provided by the Settlement Agreement, to collect the Outstanding Balance pursuant to this Promissory Note and/or pursuant to the Stipulation of Judgment.

C.      Holder retains any and all other rights and remedies it has or may have under law and equity, and may exercise those rights and remedies.

D.      No failure or delay on the part of Holder to exercise any right or remedy shall operate as a waiver of Holder's rights.  No partial or single exercise by Holder of any right or remedy shall operate as a waiver of Holder's rights.

E.      Maker will pay Holder all reasonable costs of collection, including reasonable attorneys' fees and expenses.

8.      Waiver by Holder of any default by Maker, its successors, or assigns will not constitute a waiver of a subsequent default.  Failure by Holder  to exercise any  right, power, or privilege which it may have by reason of default will not preclude the exercise of such right, power, or privilege so long as such default remains uncured or if a subsequent default occurs.

9.      This Promissory Note shall be governed and construed according to the laws of the United States of America.

10.     Maker acknowledges that it is entering into this Promissory Note freely, voluntarily and with no degree of compulsion whatsoever.

11.     Maker shall provide the United States Attorney's Office with a certified copy of a resolution of its Board of Directors affirming that Maker has authority to enter into this Promissory Note and the Settlement Agreement, and that Maker's Board of Directors has: (1) reviewed this Promissory Note, the Stipulation of Judgment, and the Settlement Agreement; (2) consulted with legal counsel in connection with this matter; (3) voted to authorize Maker to enter into this Promissory Note; and (4) voted to authorize the corporate officer(s) identified below to execute this Promissory Note on behalf of Maker and to take such further steps as necessary to carry out the terms of this Promissory Note.

IN WITNESS THEREOF, Maker, intending to be legally bound hereby and so bind its successors and assigns, has caused this Promissory Note to be executed by its authorized corporate officer, duly attested this  20th day of August, 2015

HotChalk, Inc.

By:     _____

Name: _____

Title: _____

Corporate Acknowledgment

State of _____

On August 20, 2015, before me personally came _____, to me known who, being duly sworn, did depose and state that (1) he resides in _____, (2) is an officer of HotChalk, Inc. ("Maker"), the corporation described in and which executed the above instrument, (3) and that he signed his name thereto.

_____

Notary Public

State of _____

My Commission Expires:

THE UNITED STATES OF AMERICA

JOHN LEONARDO
UNITED STATES ATTORNEY

DATED: _____     BY: _____

TODD F. LANG
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF ARIZONA

## Promissory Note

1.     For value received,  and pursuant to a Settlement Agreement dated August 20, 2015 attached hereto (Settlement Agreement), entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Education ("Holder"), HotChalk, Inc., a Delaware corporation, Concordia University, an Oregon public benefit corporation, and Regina Calisesi, Toi, and Jeffri Bolton, in reference to a *qui tam* action in the United States District Court for the District of Arizona captioned *United States ex rel. Regina Calisesi, et al. v. HotChalk, Inc., et al.*, CV-13-1150-PHX-NVW, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), Concordia University ("Maker"), for itself and its successors and assigns, promises to pay to Holder, or its assignee, the aggregate principal sum of $500,000.00, together with interest  as set forth below (collectively, as reduced from time to time, the "Outstanding Balance").  Maker's obligations under this Promissory Note (the "Obligations") are several from, and not joint with, the obligations of HotChalk, Inc. under a similar promissory note of even date herewith, in the amount of $500,000.00.  Payments under this Promissory Note will be paid in the amounts and on the dates specified in the following chart:

Schedule of Payments (including interest)

|  | PAYMENT | PRINCIPAL | INTEREST | BALANCE |
|---|---|---|---|---|
| BEGINNING BALANCE |  |  |  | $500,000 |
| Initial Payment (due on or before August 30, 2015). | $125,000 |  |  | $375,000 |
| Payment Two (due on or before August 30, 2016) | $125,000 |  | $3,750 | $253,750 |
| Payment Three (due on or before August 30, 2017) | $125,000 |  | $2,537.50 | $131,287.50 |
| Payment Four (due on or before June 30, 2018) | $131,287.50 |  |  | $0 |

2.     Payments will be made by wire transfer in the amounts and on the dates specified in paragraph 1 above.  If there is any change in the method or instructions of payment, Holder shall inform the Maker at least 5 business days before payment is due.

3.     This Promissory Note may be prepaid, in whole or in part, without penalty or premium. Partial payment does not alter the interest amount due each year as reflected in paragraph 1 of this Promissory Note.

4.     Default, Events.  Any of the following events shall be considered an "Event of Default" under this Promissory Note:

   (a)     Payment - default (other than a default resulting from a force majeure event) in the payment when due of any of the Obligations hereunder, which default is not cured within three (3) business days; or

   (b)     Representations and Warranties - any representation or warranty made by Maker in this Promissory Note or made by Maker in any statement furnished in connection with this Promissory Note proves to have been incorrect in any material respect as of the date made; or

   (c)     Receivership - the application for the appointment of a receiver, trustee, liquidator, conservator, rehabilitator, or similar individual, officer or committee of, or for any property of, Maker; or

   (d)     Bankruptcy Proceedings - the commencement of any proceeding, suit or action under any provisions of the Title 11 of the U.S. Code, as amended, or any similar statute, for adjudication as a bankrupt, reorganization, extension, arrangement, or adjustment of debts of Maker; or

   (e)     Act of Bankruptcy - the admission in writing by Maker of its inability to pay, or Maker's inability to pay, or Maker generally not paying, its debts as they become due.

5.     Maker shall provide Holder written notice of an Event of Default within two (2) business days after the occurrence of such event by overnight mail, delivered to the  Office of the United States Attorney for the District of Arizona (USAO), at 40 N. Central Ave., Suite 1200, Phoenix, AZ 85004-4408.

6.     Upon the occurrence of an Event of Default, without further notice or presentment and demand by Holder:

   A.     Subject to the cure period set forth in Section 1(c) of the Settlement Agreement and Maker's failure to perform thereunder, the Outstanding Balance shall become immediately due and payable ("Default Amount").  Interest shall accrue on the Default Amount at a rate of 12 percent per annum, from the date of the Event of Default until the date the Obligations are paid in full, pursuant to the Stipulation of Judgment or otherwise.

B.      Holder may take any and all actions provided under law and equity, or provided by the Settlement Agreement, to collect the Outstanding Balance pursuant to this Promissory Note and/or pursuant to the Stipulation of Judgment.

C.      Holder retains any and all other rights and remedies it has or may have under law and equity, and may exercise those rights and remedies.

D.      No failure or delay on the part of Holder to exercise any right or remedy shall operate as a waiver of Holder's rights.  No partial or single exercise by Holder of any right or remedy shall operate as a waiver of Holder's rights.

E.      Maker will pay Holder all reasonable costs of collection, including reasonable attorneys' fees and expenses.

8.      Waiver by Holder of any default by Maker, its successors, or assigns will not constitute a waiver of a subsequent default.  Failure by Holder  to exercise any  right, power, or privilege which it may have by reason of default will not preclude the exercise of such right, power, or privilege so long as such default remains uncured or if a subsequent default occurs.

9.      This Promissory Note shall be governed and construed according to the laws of the United States of America.

10.     Maker acknowledges that it is entering into this Promissory Note freely, voluntarily and with no degree of compulsion whatsoever.

11.     Maker shall provide the United States Attorney's Office with a certified copy of a resolution of its Board of Directors affirming that Maker has authority to enter into this Promissory Note and the Settlement Agreement, and that Maker's Board of Directors has: (1) reviewed this Promissory Note, the Stipulation of Judgment, and the Settlement Agreement; (2) consulted with legal counsel in connection with this matter; (3) voted to authorize Maker to enter into this Promissory Note; and (4) voted to authorize the corporate officer(s) identified below to execute this Promissory Note on behalf of Maker and to take such further steps as necessary to carry out the terms of this Promissory Note.


IN WITNESS THEREOF, Maker, intending to be legally bound hereby and so bind its successors and assigns, has caused this Promissory Note to be executed by its authorized corporate officer, duly attested this  20th day of August, 2015

Concordia University

By:     _____

Name: _____

Title: _____

Corporate Acknowledgment
State of Oregon


On August 20, 2015, before me personally came _____, to me known
who, being duly sworn, did depose and state that (1) he resides in _____,
(2) is an officer of Concordia University ("Maker"), the corporation described in and which
executed the above instrument, (3) and that he signed his name thereto.



_____
Notary Public
State of Oregon
My Commission Expires:



THE UNITED STATES OF AMERICA

JOHN LEONARDO
UNITED STATES ATTORNEY


DATED: _____      BY: _____
                             TODD F. LANG
                             ASSISTANT UNITED STATES ATTORNEY
                             DISTRICT OF ARIZONA

**EXHIBIT B**

JOHN S. LEONARDO
United States Attorney
District of Arizona

TODD F. LANG
Assistant U.S. Attorney
Arizona State Bar No. 018455
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  602-514-7500
Facsimile:  602-514-7760
Email: Todd.Lang@usdoj.gov

*Attorneys for the United States of America*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America *ex rel.* Regina Calisesi, *et al.*, <br><br> Plaintiff-Relators, <br><br> v. <br><br> HotChalk Inc., *et al.,* <br><br> Defendants. | CV-13-01150-PHX-NVW <br><br> **STIPULATION FOR ENTRY OF CONSENT JUDGMENT** |

The parties hereby stipulate and agree to the following:

1. The parties stipulate and agree to the entry of the Consent Judgment filed concurrently herewith.

2. Defendants (a) stipulate and agree that they are subject to the jurisdiction of the United States District Court for the District of Arizona; (b) consent to the Court's personal jurisdiction over them; and (c) waive service of process or other notification with respect to the Stipulation for Entry of Consent Judgment and the Consent Judgment.

3. The parties stipulate and agree that plaintiff, the United States of America, is entitled to recover judgment against defendants in the principal amount of ONE

1  MILLION DOLLARS ($1,000,000.00), together with interest thereon from the

2  date of judgment until paid at the rate provided under 28 U.S.C. § 1961 and all

3  allowable costs.

4. The parties stipulate and agree that the Consent Judgment shall be satisfied

5  from any or all of defendants' (or their estates') property as permitted by law,

6  including, but not limited to, sole and separate property, community property,

7  and/or any other assets.

5. The parties stipulate and agree that the indebtedness owed under this

9  Stipulation for Entry of Consent Judgment, as aforesaid, is not dischargeable

10  under 11 U.S.C. § 523(a)(2)(A) or any other bankruptcy statute or provision.

11  Respectfully submitted this_____ day of _____, 20___.

JOHN S. LEONARDO
United States Attorney
District of Arizona


_____
TODD F. LANG
Assistant U.S. Attorney
Attorney for the United States of America


DATED: _____     BY:   _____
                            [X]


DATED: _____     BY:   _____
                            RONALD ROACH
                            DLA Piper LLP
                            Counsel for HotChalk, Inc


DATED: _____     BY:   _____
                            [X]


DATED: _____     BY:   _____
                            JEREMY SACKS
                            Stoel Rives LLP
                            Counsel for Concordia University – Portland

- 2 -

1
2
3
4
5
6                        **UNITED STATES DISTRICT COURT**
7                           **DISTRICT OF ARIZONA**
8
9    United States of America *ex rel*. Regina          CV-13-01150-PHX-NVW
     Calisesi, *et al.*,
10                        Plaintiff-Relators,           **CONSENT JUDGMENT**
11           v.
12   HotChalk Inc., *et al.,*
13                        Defendants.
14

15           The Court finding that it has jurisdiction over the subject matter and the parties and
16   that the allegations of the Complaint and the Stipulation for Entry of Consent Judgment
17   are well taken, the parties having stipulated to the entry of this Consent Judgment
18   pursuant to the Stipulation for Entry of Consent Judgment, and good cause appearing,

19           **IT IS THEREFORE ORDERED** that judgment be entered in favor of plaintiff,
20   the United States of America, and against defendants in the principal amount of ONE
21   MILLION DOLLARS ($1,000,000.00), together with interest thereon from the date of
22   judgment until paid at the rate provided under 28 U.S.C. § 1961 and all allowable costs.

23           **IT IS FURTHER ORDERED** that this Consent Judgment shall be satisfied from
24   any or all of defendants' (or their estates') property as permitted by law, including, but not
25   limited to, sole and separate property, community property, and/or any other assets
26   identified and agreed upon by the parties in the settlement agreement.
27
28